# Day, Berry & Howard LLP

### COUNSELLORS AT LAW

Francis H. Morrison III
Direct Dial: (860) 275-0231
E-mail: mjbecker@dbh.com

FILED

2003 DEC -4 P 2 33

US DISTRICT COURT
HARTFORD CT

December 1, 2003

**VIA HAND DELIVERY**

The Hon. Alfred V. Covello
Senior Judge
United States District Court
    for the District of Connecticut
450 Main Street
Hartford, CT  06103

Re:  *Easco Hand Tools, Inc., et al  v. Hu, Hou-Fei a/k/a Bobby Hu,* Civil Action No.
3:02 CV 1723 (AVC)

*Easco Hand Tools, Inc., et al v. Hu, Hou-Fei a/k/a Bobby Hu,* Civil Action No.
3:02 CV 1747 (AVC)

Dear Judge Covello:

Plaintiffs ask the Court to enter plaintiffs' proposed scheduling order in these actions, attached at Tab A. This scheduling order addresses both the general modifications to the schedule that the parties discussed at the October 22, 2003 Status Conference, and the resolution of the pending motions to compel discussed during the October 23 conference call with the Court. The parties are in agreement as to virtually all of the deadlines in this case, including the deadlines pertaining to a *Markman* hearing.

Regrettably, despite extensive scheduling negotiations undertaken since the conference call with the Court, defendant refuses to honor the Court's explicit directive during that call for the parties to exchange *simultaneously* the information sought in the parties' respective motions to compel, namely their claim construction positions and plaintiffs' invalidity position. As can be seen from the defendant's proposed schedule, attached at Tab B, defendant wishes to ignore the Court's mandate and have plaintiffs provide their invalidity position one month prior to the exchange of claim construction positions. (*See* Tab B, par. 1(b).) This, as the Court recognized and rejected in the conference call, would permit defendant to structure his claim construction position based not as required by law on the patent itself, but rather improperly on efforts to avoid the prior art identified by plaintiffs.

41460188_2.DOC 027421-00000
December 1, 2003 2:57 PM

CityPlace I  |  Hartford, CT 06103  |  *t* 860 275 0100 *f* 860 275 0343

Boston  Greenwich  Hartford  New York  Stamford  *www.dbh.com*

Day, Berry & Howard LLP

The Hon. Alfred V. Covello
December 1, 2003
Page 2

The parties have also failed to reach agreement as to two other aspects of the scheduling order. First, defendant seeks an overly broad and improper description in the schedule of the information plaintiffs will provide concerning their invalidity position. (*Id.*) Second, the parties are unable to agree on whether to include in the scheduling order deadlines concerning willful infringement issues. Each of these outstanding issues are addressed below.

## Simultaneous Disclosure Of Claim Construction And Invalidity Positions

This question of timing was discussed at length during the October 23, 2003 telephonic conference. Your Honor emphatically rejected defendant's counsel Mr. Heim's suggestion that plaintiffs' invalidity position be produced prior to the exchange of claim constructions. Instead, Your Honor stated that plaintiffs' invalidity position and the parties' claim construction positions would be exchanged *simultaneously*. Because the timing of the parties' disclosures has already been addressed and resolved, defendant is without justification in continuing to propose sequential disclosures.

Attempting to reargue this already-decided issue, defendant again contends that he would somehow be prejudiced if he did not have the opportunity to construe claim terms after examining plaintiffs' invalidity position. (*See* e-mail exchange attached at Tab C.)  This is precisely the legally-improper scenario that led to the plaintiffs' Motion to Compel.  In his email, defendant Hu adds nothing new, but simply reiterates that he will be prejudiced by not knowing all the terms "in dispute" when he provides his proposed constructions and then be barred from later amending his proposals to include unforeseen terms.[1]

Plaintiffs' proposed order provides the simultaneous exchange directed by the Court. (*See* Tab A, par. 2.)  Furthermore, to address defendant's concern that he have adequate advance knowledge of the terms "in dispute", plaintiffs *voluntarily propose* to provide defendant in advance of the exchange date with a list of terms that plaintiffs believe in good faith to be in dispute. (*See id.* par. 1.)  All parties, therefore, will have *advance notice* of all terms that are to be construed on the exchange date, eliminating any possible surprise or prejudice. Moreover, if any other terms emerge later in the case as needing construction, the parties may provide additional constructions either by agreement or for good cause shown to the Court. (*See* Tab A, par. 2(a).)

Defendant has rejected plaintiffs' proposal claiming that he will need to identify every term (or virtually every term) in the asserted claims, thereby placing defendant in a "Catch-22". (*See* Tab C.)  Defendant proceeds from a legally erroneous premise, namely that it is somehow unfair or unduly burdensome to require him to provide proposed constructions for all terms in

---

[1] All parties agree that following their exchange, claim construction proposals may only be amended or supplemented on motion for good cause shown. (*See* Tab A, par. 2(a) and Tab B, par. 2(a).)

Day, Berry & Howard LLP

The Hon. Alfred V. Covello
December 1, 2003
Page 3

the patent claims he asserts are infringed. (*See* Tab C and Defendant's Opp. to Plaintiffs' Motion to Compel.)  Patentees, such as defendant Hu, claiming infringement are required to propose constructions for all terms in their asserted claims so that the parties, and the courts, can determine the terms genuinely "in dispute" for purposes of claim construction. *See, e.g., Centillion Data Systems, Inc. v. American Management Systems, Inc.*, 138 F. Supp.2d 1117, 1118-21 (S.D. Ind. 2001)(requiring patentee to construe each and every term in each asserted claim), copy attached at Tab D.  In *Centillion*, the court held it cannot be an unfair burden to require a party claiming infringement to construe terms in its own patents, because such construction necessarily must have been completed by the patentee prior to claiming infringement. *Id.*[2]

Notwithstanding Hu's legal obligation to provide his proposed construction of each and every term in his asserted claims, plaintiffs have agreed voluntarily to require constructions for only those terms the parties identify in advance as being "in dispute". (*See* Tab A, par. 2.) Defendant has already specified in discovery the terms he believes are in dispute and plaintiffs offer to do the same well in advance of the simultaneous exchange date. (*Id.*, at par. 1.)  The subsequent simultaneous exchange of claim constructions will include all the terms the parties believe are in dispute for the asserted claims, but will not include terms that neither party has identified prior to the exchange date, thereby eliminating any possible burden of having to construe every term in both patents.

In contrast, defendant's already-rejected proposal would allow defendant to improperly tailor his claim construction position after reviewing plaintiffs' invalidity position.   Plaintiffs' have already compromised by agreeing to accept constructions for less than all of the claim terms, and by agreeing to provide an advance list of the remaining terms plaintiffs believe should be construed.  To additionally require that plaintiffs provide their invalidity position first would amount to a denial of plaintiffs' Motion to Compel and a granting of defendant's Motion to Compel, because it would require defendant to provide a claim construction for only some of the

---

[2] Notably, the patentee in *Centillion* also attempted to rely on the very same misconstruction of *Vivid Tech., Inc. v. American Science and Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999), that Hu asserted here (*see* Defendant's Opp. to Plaintiffs' Motion to Compel).  The court expressly rejected that argument, explaining that *Vivid Tech.* is only a limit on the scope of the court's claim construction order not on the parties' briefing or their discovery. *Centillion*, 138 F. Supp.2d at 1120 ("*Vivid Technologies* stands for the principle that, if a claim, an element of a claim, or an aspect of a claim is not material to a plaintiff's allegation of infringement, then a court need not and should not construe it as part of its Markman ruling.  A corollary is that, before a Markman issue is ripe, discovery or case management should have progressed to the point where the parties and the court can be reasonably certain which claim terms are at issue . . . .").  Similarly, *Vivid Tech.*, provides Hu with no rationale to withhold his proposed construction of all asserted claims here.

Day, Berry & Howard LLP

The Hon. Alfred V. Covello
December 1, 2003
Page 4

claim terms, and to do so only after reviewing plaintiffs' invalidity position. Defendant has provided no legal or practical basis for affording him such an improper advantage.

### Scope of Invalidity Disclosure

Concerning the scope of information to be provided in plaintiffs' invalidity position, plaintiffs have adopted the precise language from *defendant's own* October 29, 2003 proposal stating that plaintiffs will provide "all facts and specifically identify all information supporting their allegations of invalidity of the Claims-At-Issue." (*See* Tab A, par. 2(b)). This provision appropriately requires plaintiffs to provide the facts supporting their invalidity position – which is all that defendant is entitled to obtain at this time in fact discovery.

Refusing to adhere to his own October 29 proposal, defendant now seeks to expand plaintiffs' obligation beyond what defendant is properly entitled to receive, beyond anything the parties have ever discussed, beyond what the defendant's motion to compel seeks, and beyond what his underlying interrogatories and requests for production seek. For example, the disclosure obligations defendant now seeks to impose call for plaintiffs to identify for each combination of prior art the "suggestion to combine" such art. (*See* Tab B, par. 1(b).) Whether a disclosure constitutes a suggestion to combine is a matter of expert witness opinion, because it is to be determined from the standpoint of a person of ordinary skill in the art at the time the invention was made. *See, e.g., Southern Clay Products v. United Catalysts, Inc.*, 43 Fed. Appx. 379, 388 (Fed. Cir. 2002) (defendant offered expert opinion on the suggestion to combine prior art references); *Pfaff v. Wells Elecs.*, 124 F.3d 1429, 1439 (Fed. Cir. 1997) (court relied on expert testimony in determining that the motivation to combine the prior art would be provided by the knowledge of one skilled in the art.) Through his onerous description of plaintiffs' invalidity disclosure, defendant improperly seeks to circumvent the agreed-upon expert disclosure deadlines and obtain a preview of plaintiffs' expert witness report(s).

Moreover, defendant's proposed invalidity disclosure would essentially require plaintiffs' trial arguments concerning invalidity, which of course cannot be determined until the Court has construed the claims at issue. *See Key Pharms v. Hercon Lab. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998) (noting that a determination of anticipation or obviousness first requires a construction of the claim). Defendant is seeking to trap plaintiffs by calling for overly detailed, opinion-driven, invalidity arguments at a premature stage. All defendant has asked for in his discovery requests, and all defendant is entitled to receive at this time, are the facts upon which plaintiffs have based their invalidity allegations in the complaints in these cases. Plaintiff's proposed order appropriately requires the provision of that factual information. (*See* Tab A, par. 2(a).)

### Scheduling of Willful Infringement Deadlines

Any schedule pertaining to willful infringement issues should be set after the decision in the *Knorr-Bremse* matter – the pending Federal Circuit appeal upon which this Court based its

Day, Berry & Howard LLP

The Hon. Alfred V. Covello
December 1, 2003
Page 5

stay of discovery on willful infringement.    (*See Court's Order* of October 22, 2003.)  In contrast, defendant seeks in his current proposal to require plaintiffs to decide whether to rely on an opinion of counsel, decide whether they seek to bifurcate willfulness from liability, and decide whether they agree that the stay should be lifted, all by a date certain and regardless of whether or not the Federal Circuit has decided *Knorr-Bremse*. (*See* Tab B, par. 8)  Defendant's proposal contravenes the Court's ruling staying discovery on willful infringement until *Knorr-Bremse* is decided, so that plaintiffs' decisions regarding opinions of counsel may be informed by settled law.  Because the Court and the parties already will revisit the scheduling of willful infringement matters once *Knorr-Bremse* is decided, the schedule need not and should not include such randomly-chosen deadlines.

Plaintiffs accordingly request that their proposed scheduling order, attached at Tab A, be entered.  In the event the Court is unwilling to enter this proposed schedule, plaintiffs request that the Court decide the pending motions to compel.  In either regard, plaintiffs are ready to participate in another telephonic or in person conference should the Court require further information or otherwise find a conference helpful.  Plaintiffs propose Thursday, December 4 or Friday, December 5, 2003 for such a conference.

Very truly yours,

Francis H. Morrison III

FHM/kmb
cc:    Jonathan M. Pierce, Esq.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EASCO HAND TOOLS, INC., | ) | |
| ARMSTRONG TOOLS INC., KINGSLEY | ) | |
| TOOLS INC., LEA WAY HAND TOOL | ) | Civil Action No.  3:02 CV 1723 |
| CORPORATION, AND MATCO TOOLS | ) | and 3:02 CV 1747 |
| CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HU, HOU-FEI, a/k/a BOBBY HU, | ) | |
| | ) | |
| Defendant. | ) | |

## [PLAINTIFFS' PROPOSED] SCHEDULING ORDER

(1)   **January 16, 2004**: Plaintiffs shall identify the claim terms they believe, in good faith, require construction.

(2)   **February 16, 2004**:

   (a)   All parties shall provide their proposed claim constructions.  After this date, any party seeking to amend, modify or submit any proposed claim construction submitted prior to this date or submitted under Paragraph 2(a), must either obtain the consent of all other parties or file a motion requesting permission from the Court for such amendment, modification, or new construction and establish to the Court that good cause exists for entry of the same;

   (b)   Plaintiffs shall provide all facts and specifically identify all information supporting their allegations of invalidity of the Claims-at-Issue;

   (c)   Defendant shall provide an infringement claim chart for each allegedly infringing device that specifically correlates the features of each such device with the limitations of each asserted claim; and

   (d)   The disclosures in Item (2) shall be filed with the Court.

(3)   **March 1, 2004**:  Parties shall have conferred in good faith before this date in an attempt to agree upon the limitations of the asserted claims that are in dispute for the purposes of a *Markman* hearing.  On this date the parties will file a Joint Claim Construction Statement setting forth the construction of those claim terms on which the parties agree, each parties' proposed construction for each disputed claim term, and the identity of each

1

witness each party expects to call to testify at the *Markman* hearing, except for any expert witnesses who will be designated as set forth below.

(4)     **March 31, 2004**: Defendant shall file and serve an opening *Markman* brief and any evidence supporting his claim construction, including but not limited to identifying each witness Defendant expects to call to testify at the *Markman* Hearing and, to the extent Defendant identifies an expert witness to testify on claim construction, providing a report setting forth that expected testimony.  Notwithstanding the foregoing, Plaintiffs reserve the right to object to any expert testimony in whole or in part.

(5)     **April 30, 2004**: Plaintiffs shall file and serve their responsive *Markman* brief and any evidence supporting their claim construction, including but not limited to identifying each witness it expects to call to testify at the *Markman* Hearing and, to the extent Plaintiffs identify an expert witness to testify on claim construction, providing a report setting forth that expected testimony.  Notwithstanding the foregoing, Defendant reserves the right to object to any expert testimony in whole or in part.

(6)     **May 14, 2004**: Defendant may file and serve a reply *Markman* brief on claim construction and may identify an expert if he did not previously do so pursuant to paragraph (4) but plaintiffs identified an expert pursuant to paragraph (5).  Notwithstanding the foregoing, Plaintiffs reserve the right to object to any expert testimony in whole or in part.

(7)     **June 14, 2004**: Subject to the convenience of the Court's calendar, the Court shall conduct a *Markman* Hearing during this week.

(8)     **November 15, 2004**: The party having the burden of proof on an issue shall designate all trial experts and provide opposing counsel with reports from retained experts regarding all such issues.

(9)     **December 14, 2004**: The party not having the burden of proof on an issue shall designate all trial experts and provide opposing counsel with reports from retained experts regarding all such issues.

(10)     Within seven days of the service of any expert report pursuant to paragraphs (8) and (9) above, the designating party shall produce the file of the expert witness authoring such report, including all documents reviewed and/or relied upon in connection with the preparation of the report as well as any computer-generated data or information.

(11)     **January 14, 2005**: All discovery in both cases related to liability (infringement, validity, unenforceability, and damages), including depositions of all related witnesses, shall be completed. All written discovery shall be served sufficiently in advance of this date that responses thereto are due *before* this date.

(12)     **February 15, 2005**: All motions, except motions in limine incident to trial, shall be filed.

2

(13)    **March 31, 2005**: The parties shall file a joint trial memorandum in accordance with the pretrial order, which order shall accompany the jury selection calendar, and be sent to the parties.

(14)    **Within 30 days after the deadline for completion of the joint trial memorandum**, the liability and damages issues in both the 1723 and 1747 cases shall be ready for trial.

It is so ordered this _____ day of December, 2003 at Hartford, Connecticut.

                                   _____
                                   Alfred V. Covello, Senior U.S.D.J.

113137.01/2186.00100

B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EASCO HAND TOOLS, INC.,<br>ARMSTRONG TOOLS INC., KINGSLEY<br>TOOLS INC., LEA WAY HAND TOOL<br>CORPORATION, AND MATCO TOOLS<br>CORPORATION, | )<br>)<br>)<br>)<br>) | Civil Action No.  3:02 CV 1723<br>                   and  3:02 CV 1747 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HU, HOU-FEI, a/k/a BOBBY HU, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT PROPOSED SCHEDULING ORDER

(1)   **January 16, 2004**:

  (a)   Plaintiffs and Defendant shall identify the specific claim terms they respectively believe, in good faith, require construction;

  (b)   Plaintiffs shall specifically identify each item of prior art that allegedly anticipates or renders obvious each asserted claim, and shall provide a chart for each asserted claim that (i) identifies where specifically in each alleged item of prior art each limitation of each asserted claim is found and (ii) if a combination of prior art items allegedly renders a claim obvious, identifies the motivation to combine such items.  Plaintiffs shall also specifically explain any invalidity allegation made under 35 U.S.C. § 112; and

  (c)   Defendant shall provide an infringement claim chart for each allegedly infringing device that specifically correlates the features of each such device with the limitations of each asserted claim.

(2)   **February 16, 2004**:

  (a)   All parties shall provide their proposed claim constructions.  After this date, any party seeking to amend or modify any proposed claim construction submitted prior to this date or seeking to amend or modify any construction submitted under Paragraph (2)(a) that was identified in Paragraph (1), must either obtain the consent of all other parties or file a motion requesting permission from the Court for such amendment or modification and establish to the Court that good cause exists for entry of the same; and

1

(b)    The disclosures in Paragraph (2) shall be filed with the Court.

(3)    **March 1, 2004**: Parties shall have conferred in good faith before this date in an attempt to agree upon the limitations of the asserted claims that are in dispute for the purposes of a *Markman* hearing.  On this date the parties will file a Joint Claim Construction Statement setting forth each party's proposed construction for each disputed claim term and the identity of each witness each party expects to call to testify at the *Markman* hearing, except for any expert witnesses who will be designated as set forth below.

(4)    **March 31, 2004**: Defendant shall file and serve an opening *Markman* brief and any evidence supporting his claim construction, including but not limited to identifying each witness Defendant expects to call to testify at the *Markman* Hearing and, to the extent Defendant identifies an expert witness to testify on claim construction, providing a report setting forth that expected testimony.  Notwithstanding the foregoing, Plaintiffs reserve the right to object to any expert testimony in whole or in part.

(5)    **April 30, 2004**: Plaintiffs shall file and serve their responsive *Markman* brief and any evidence supporting their claim construction, including but not limited to identifying each witness Plaintiffs expect to call to testify at the *Markman* Hearing and, to the extent Plaintiffs identify an expert witness to testify on claim construction, providing a report setting forth that expected testimony.  Notwithstanding the foregoing, Defendant reserves the right to object to any expert testimony in whole or in part.

(6)    **May 14, 2004**: Defendant may file and serve a reply *Markman* brief on claim construction and may identify an expert if he did not previously do so pursuant to paragraph (4) but Plaintiffs identified an expert pursuant to paragraph (5). Notwithstanding the foregoing, Plaintiffs reserve the right to object to any expert testimony in whole or in part.

(7)    **June 14, 2004**: Subject to the convenience of the Court's calendar, the Court shall conduct a *Markman* Hearing during this week.

(8)    **September 14, 2004**: The Plaintiffs shall notify Defendant and the Court (1) in each case whether they intend to rely on opinions of counsel as a defense to willfulness and (2) in each case whether they intend to seek bifurcation of a trial on willfulness from the trial of liability and damages and, if the Court has not yet lifted its stay on willfulness discovery, whether they agree to lift the stay on discovery on willfulness.

(9)    **November 15, 2004**: The party having the burden of proof on an issue shall designate all trial experts and provide opposing counsel with reports from such experts regarding all such issues.

(10)   **December 14, 2004**: The party not having the burden of proof on an issue shall designate all trial experts and provide opposing counsel with reports from such experts regarding all such issues.

113137.01/2186.00100

(11)    Within seven days of the service of any expert report pursuant to paragraphs (8) and (9) above, the designating party shall produce the file of the expert witness authoring such report, including all documents reviewed and/or relied upon in connection with the preparation of the report as well as any computer-generated data or information.

(12)    **January 14, 2005**: All discovery in both cases related to liability (infringement, validity, unenforceability, and damages), including depositions of all related witnesses, shall be completed. All written discovery shall be served sufficiently in advance of this date that responses thereto are due *before* this date.

(13)    **February 15, 2005**: All motions, except motions in limine incident to trial, shall be filed.

(14)    **March 31, 2005**: The parties shall file a joint trial memorandum in accordance with the pretrial order, which order shall accompany the jury selection calendar, and be sent to the parties.

(15)    **Within 30 days after the deadline for completion of the joint trial memorandum,** the liability and damages issues in both the 1747 and the 1723 cases shall be ready for trial.

It is so ordered this _____ day of November, 2003 at Hartford, Connecticut.

_____

Alfred V. Covello, Chief U.S.D.J.

113137.01/2186.00100



**Boardway, Kathy**

-----Original Message-----
From: Doug Wilson [mailto:dwilson@conleyrose.com]
Sent: Friday, November 21, 2003 12:30 PM
To: Becker, Matthew J.
Subject: RE: Proposed Scheduling Order

Matt:

First, we revised paragraphs 1 and 2 to better reflect the Court's direction in resolving the pending motions. We do not believe that the Court required the Defendant to submit to the Catch-22 in which Plaintiff seeks to place him. Your position has consistently been that you believe that the Defendant should construe all terms of all asserted claims before he receives your invalidity positions. Your rationale has been that you will be unfairly prejudiced if Defendant is provided with the facts underlying your invalidity allegations prior to taking a position on claim construction. Therefore, you assert that Defendant should be forever barred from asserting claim constructions on any terms that he does not construe in a brief due on the same day as your invalidity disclosure. If Defendant agrees to this position, Defendant is effectively conceding both motions to compel and placing himself in an unfair position. The Court did not grant your motion to compel and deny Defendant's.

If Defendant is going to be forever barred from taking a position on claim construction terms, then Defendant is entitled to know what terms will be in issue. It appears from Plaintiffs' correspondence that Plaintiff intends to simply identify all, or at least most, of the terms in the asserted claims in its initial pleading. If this is in fact what Plaintiffs intend to do, then Defendant will gain little, if any, useful information from this exercise. Defendant has provided Plaintiffs with numerous claim constructions as well as his detailed positions on infringement in both cases. It is unclear how Plaintiffs will be unfairly prejudiced by putting Defendant in the same position as Plaintiffs with respect to information that is relevant to determining the claim terms that are in dispute. Defendant has been willing to provide discovery on all of these issues up to this point without a hint of reciprocity from Plaintiffs. Plaintiffs have provided no valid justification for their requirement that Defendant now disclose any remaining claim constructions before Plaintiffs disclose any claim constructions or even any facts underlying their invalidity contentions.

We do not believe that the Court ordered Defendant to submit to the Catch-22 to which Plaintiffs would have Defendant submit. The bar in presenting a position to the Court on claim construction that Plaintiffs seek to invoke does not promote the fair adjudication of the present claims. Rather, it seeks to force Defendant into the same quandary of construing every claim term without any knowledge as to which claims are in dispute or being barred forever from offering a construction. The Court refused to place Defendant in this position, and Defendant will not voluntarily submit to it.

Second, with respect to paragraph 8, Defendant added paragraph 8 as a compromise to removing the detailed language regarding discovery and trial of willfulness issues. The Court denied Plaintiffs' motion to bifurcate. The Court simply stayed discovery on willfulness. However, as Mr. Gutkoski noted in his letter, discovery on willfulness is only stayed until the Federal Circuit decides the Knorr-Bremse case. After that, Plaintiffs will have to make a decision as to whether they intend to rely on opinions of counsel as a defense to willfulness. It would be more efficient if Plaintiffs made that decision early enough to be included in the regular discovery period. Moreover, if Plaintiffs intend to again move to bifurcate willfulness in light of potential prejudice, that motion should be required

early enough such that it does not unduly disrupt the regular course of
proceedings if it is denied.

Defendant would be willing to accept an alternative date for providing the
information requested in paragraph 8, such as by the date specified or
within ten days after the Federal Circuit decides the Knorr-Bremse case,
whichever is later. However, Defendant would only accept such a proposal
with the understanding that Defendant would be provided at least three
months of discovery on willfulness after Plaintiffs provide notice of their
decision, notwithstanding any other dates in the scheduling order.

As I said previously, if you would like to discuss these issues in more
detail, please give me a call.

Douglas R. Wilson
dwilson@conleyrose.com
Conley Rose, P.C.
600 Travis Suite 7100
Houston, TX 77002
(713) 238-8020
(713) 238-8008 Fax


-----Original Message-----
From: Becker, Matthew J. [mailto:mjbecker@dbh.com]
Sent: Thursday, November 20, 2003 5:44 PM
To: Doug Wilson
Subject: RE: Proposed Scheduling Order


Doug:

We will review your new proposal and respond shortly. In the meantime,
we ask that you provide us with your reasoning for changing paragraphs
(1) and (2), as well as your reasoning in adding paragraph (8), in your
new proposal. Although Mr. Gutkoski has provided me with a detailed
account of his discussions with Mr. Pierce, the basis for your present
position remains unclear. We have consistently provided you with a
detailed explanation of the reasons for our positions in a good faith
effort to reach agreement or at least narrow the issues, and ask that
you reciprocate. Thank you.

Matthew J. Becker
Day, Berry & Howard L.L.P.
CityPlace I
Hartford, CT 06103
Ph:  (860) 275-0564
Fax:  (860) 275-0343
mjbecker@dbh.com

-----Original Message-----
From: Doug Wilson [mailto:dwilson@conleyrose.com]
Sent: Thursday, November 20, 2003 11:11 AM
To: Becker, Matthew J.
Cc: Gutkoski, John T.; Jonathan Pierce; Michael Heim; Trey Peacock
(E-mail)
Subject: Proposed Scheduling Order


Matt:

In his absence, Mr. Pierce has asked me to reply to Mr. Gutkoski's
proposed
scheduling order of November 18. We will not respond to Mr. Gutkoski's
letter point-by-point other than to state that we disagree with many of
the
statements made in his letter. In the interest of narrowing the areas

2

of
disagreement as much as possible, we include an amended proposal
incorporating some of your suggestions and some new related amendments.
While we remain willing to negotiate, it appears that we are at an
impasse
with respect to some issues.  At this point, we believe it would be best
to
attempt to narrow the areas of disagreement as much as possible and
submit
to the Court any issues that remain unresolved.

Please identify any proposed changes or disagreements.  If you have any
questions or would like to discuss the matter further, please call me.

Douglas R. Wilson
dwilson@conleyrose.com
Conley Rose, P.C.
600 Travis Suite 7100
Houston, TX 77002
(713) 238-8020
(713) 238-8008 Fax

*********************************
This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee
(s) named above.  Any disclosure, distribution, copying or use of the information by others is strictly prohibited.  If you have
received this message in error, please advise the sender by immediate reply and delete the original message.  Thank you.



LEXSEE 138 F.SUPP. 2D 1117

**CENTILLION DATA SYSTEMS, INC., Plaintiff, vs. AMERICAN MANAGMENT SYSTEMS, INC.; FRONTIER CORPORATION; CABLE & WIRELESS USA, INC.; and SPRINT SPECTRUM, L.P., Defendants.**

CAUSE NO. IP 98–1748–C–Y/F

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

138 F. Supp. 2d 1117; 2001 U.S. Dist. LEXIS 10116

April 2, 2001, Decided

**DISPOSITION:** **1 Defendants' Joint Motion for Expedited Ruling on the Insufficiency of Plaintiff's Opening Markman Brief (doc. no. 327) granted.

**LexisNexis (TM) HEADNOTES– Core Concepts:**

**COUNSEL:** For CENTILLION DATA SYSTEMS INC, plaintiff: MATTHEW J SIEMBIEDA, BLANK ROME COMISKY & MCCAULEY LLP, PHILADELPHIA, PA.

For CENTILLION DATA SYSTEMS INC, plaintiff: MICHAEL GREENBAUM, BLANK ROME COMISKY & MCCAULEY LLP, WASHINGTON, DC.

For CENTILLION DATA SYSTEMS INC, plaintiff: G RONALD HEATH, HOOVER HULL BAKER & HEATH, INDIANAPOLIS, IN.

For AMERICAN MANAGEMENT SYSTEMS, CABLE & WIRELESS USA INC, SPRINT SPECTRUM LP, defendants: JOHN R SCHAIBLEY III, BAKER & DANIELS, INDIANAPOLIS, IN.

For FRONTIER CORPORATION, defendant: AMY R KENNELLY, BOSE MCKINNEY & EVANS, INDIANAPOLIS, IN.

**JUDGES:** KENNARD P. FOSTER, Magistrate Judge.

**OPINIONBY:** KENNARD P. FOSTER

**OPINION:**

*1118 **ENTRY AND ORDER on Defendants' Joint Motion for Expedited Ruling on the Insufficiency of Plaintiff's Opening *Markman* Brief (doc. no. 327).**

This Cause came before the Court on the above-entitled motion. The parties were heard on their papers and at hearing held on March 22, 2001, the record of which is incorporated as if set forth herein. The defendants' motion is granted as set forth below. **2

The case management plans (September 26, 2000 (doc. no. 301) and December 7, 2000 (doc. no. 326), Part IV) and order of the Court (September 1, 2000 (doc. no. 290)) established a claims construction briefing and hearing process in accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ("*Markman I*"), *affirmed*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). This schedule required plaintiff Centillion Data Systems ("Centillion") to file its *Markman* brief first, followed by the defendants' response brief, and concluding with Centillion's reply brief. The substantive law governing *Markman* rulings is now well-established:

> Construction of patent claims is a matter of law for the court. Claims are construed from the vantage point of a person of ordinary skill in the art at the time of the invention. In construing a claim, the court first looks to the intrinsic evidence of record, namely, the language of the claim, the specification, and the prosecution history. In most circumstances, the intrinsic evidence will provide sufficient information for construing the terms.

\* \* \*

> If, after reviewing all available **3 intrinsic evidence, some genuine ambiguity still exists in the claims, the court may look to extrinsic evidence as an aid in construing the claim language. . . . It may be used to assist the court's understanding of the patent,

Case 3:02-cv-01723-AVC   Document 61   Filed 12/04/2003   Page 20 of 23

Page 2

138 F. Supp. 2d 1117, *1118; 2001 U.S. Dist. LEXIS 10116, **3

or the field of technology, but not to vary or contradict the terms of the claims.

*Jackson v. Thomson Consumer Electronics, Inc.*, 139 F. Supp. 2d 1003, 2001 U.S. Dist. LEXIS 1807, *4-7, Order Construing Claims of U.S. Patent No. 4,596,900, 2001 WL 201372, *2-3, 2001 (S.D. Ind., 2001) (citations omitted). The procedure applicable to *Markman* rulings is a matter of expedience for the court. Because Centillion initiated this suit and its patents, which it drafted and prosecuted, are in issue, the Court required Centillion *1119 to provide its construction of its asserted claims first.

Centillion filed its opening *Markman* brief on December 1, 2000 (doc. no. 321). It explained the ideas and technology behind the subject '270 and '290 patents, the law of claim construction, and the broad meanings of terms found in the first claims of each patent. Centillion gave its detailed construction of only one term in Claim **4 1 of the '270 patent, the term "exact charges actually billed." At the hearing, the defendants advised that Centillion had previously identified 26 n1 claims in the '270 patent and 9 n2 claims in the '290 patent claims that it alleges have been and are being infringed. The defendants then filed the present motion in which they complain that Centillion's brief fails to provide its construction of every claim allegedly infringed. They ask the Court to limit Centillion's allegations in this Cause to infringement of only Claim 1 of both patents, order Centillion to supplement its *Markman* brief with detailed constructions of all terms of Claim 1 in addition to "exact charges actually billed", and to allow the defendants additional time to file their responsive *Markman* brief. In the alternative, they ask the Court to order Centillion to supplement its brief with constructions of every claim allegedly infringed in this Cause. At the hearing, the defendants produced a list of 45 claim terms that they contend are "genuinely in dispute". Hearing Exhibit 1 (March 23, 2001 Rankin-Wigman letter, Exhibit A).

  n1 Three independent and twenty-three dependent claims. (Defendants' Memorandum in Support of Defendants' Joint Motion for Expedited Ruling on the Insufficiency of Centillion's Opening Markman Brief ("Brief") (doc. no. 328), p. 2); Hearing Exhibit 1 (March 23, 2001 Rankin-Wigman letter).

**5

  n2 Eight independent claims and one dependent claim. Hearing Exhibit 1 (March 23, 2001 Rankin-Wigman letter).

Centillion contends that it produced "a wholly sufficient and complete Markman brief" according to the relevant legal precedent. (Plaintiff Centillion Data System's Memorandum in Opposition to Defendants' Motion Concerning the Alleged Insufficiency of Centillion's Opening Markman Brief ("Response") (doc. no. 339), p. 9). It argues that, because a court's *Markman* ruling should construe only those claim terms that the parties genuinely dispute, "unless and until *defendants* propose meanings for these terms that are different from their ordinary and accustomed meanings . . . , there is no controversy for the Court to resolve nor any issue for Centillion to address in its submissions to the Court on claim interpretation." (Response, p. 2) (original emphasis). In effect, Centillion contends that the defendants must brief their construction of Centillion's asserted claims first so that Centillion will know which terms are genuinely disputed and need to be briefed. At the hearing **6 on the present motion and in its brief, Centillion relied primarily on the Court of Appeals for the Federal Circuit's decision in *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").

The Court agrees with the teaching of *Vivid Technologies* and the other cases cited by Centillion and assures the parties that the Court's *Markman* ruling will construe only those terms which the parties genuinely dispute. But this is a limit on the scope of the Court's ruling, not on the parties' briefing. As *Vivid Technologies* itself recognizes, the principle *1120 that a court should construe only disputed terms is intended to avoid *dictal* advisory opinions, *id.*, 200 F.3d at 803 ("lest courts construe things that are not in dispute, thus rendering an advisory opinion"), and the court employed that principle in the context of determining whether a *Markman* ruling was ripe, in other words, whether sufficient discovery had occurred so that the parties and the court "knew with reasonable **7 certainty which claim terms were at issue with respect to infringement", *id.*, so that the Court would not issue constructions of unasserted claims. The focus was not on whether the parties knew with reasonable certainty which claim terms were "at issue" with respect to *construction* but with respect to *infringement*. n3 The defendant in *Vivid Technologies* objected to the district court's staying discovery and conducting a *Markman* hearing before there had been "sufficient discovery *of the accused device* to understand which claim elements and what aspects of their interpretation were at issue . . .", *id.*, 200 F.3d at 803 (emphasis added); there is no indication that the de-

Case 3:02-cv-01723-AVC    Document 61    Filed 12/04/2003    Page 21 of 23

Page 3

138 F. Supp. 2d 1117, *1120; 2001 U.S. Dist. LEXIS 10116, **7

fendant objected to a lack of discovery on the plaintiff's claims constructions. *Vivid Technologies* stands for the principle that, if a claim, an element of a claim, or an aspect of a claim is not material to a plaintiff's allegation of infringement, then a court need not and should not construe it as part of its *Markman* ruling. A corollary is that, before a *Markman* issue is ripe, discovery or case management should have progressed to the point where the parties and **8 the court can be reasonably certain which claims terms are at issue, in other words, which claims and elements the plaintiff alleges were infringed.

    n3 The Federal Circuit's focus on the identification of the claims being asserted, and not on the parties' constructions of those claims, is further evident in the broader quote:

        It is routine case management to require litigants to identify the aspects of their case that are material to the dispute. In the case at bar the parties and the court knew with reasonable certainty which claim terms were at issue with respect to infringement; discovery was not needed for this purpose.

    *Vivid Technologies*, 200 F.3d at 803.

    In this case, as cited above, Centillion has already identified the patent claims it alleges have been and are being infringed and, on inquiry from the Court, it did not identify any additional discovery it required in order to identify additional claims allegedly infringed. The Court concludes, therefore, that it and the **9 parties are reasonably certain which claims and claim terms are at issue with respect to infringement and that the parties are ready for *Markman* briefing.

    Centillion is reluctant to provide its claims constructions first because it fears that "what defendants seek, of course, is to have Centillion further define and elaborate on the meaning of each term of every claim in the hope that Centillion will articulate some limitation that will enable defendants to construct an argument for noninfringement", (Response, p. 3), and the defendants surmise that Centillion fears being locked into its constructions. n4 But the patents in issue are Centillion's and it, not the defendants, initiated this suit alleging infringement of those patents. The logical order is for Centillion to provide its constructions of its claims first. Before it brought suit (or at least after it conducted *1121 the discovery it has in this case), Centillion must have already developed clear constructions of its relevant claims

and clear positions on the manners in which the defendants' products infringed those claims, so it is not an undue burden on Centillion to advance its constructions first. Furthermore, because **10 the defending parties are entitled to review Centillion's positions on construction before offering their own, a simultaneous exchange of constructions would not be warranted. Any risk that Centillion's own constructions will prejudice its allegations of infringement or the validity of its patents is only incidental to the necessary *Markman* process in this Cause and is a risk that Centillion assumed when it filed this Cause.

    n4 "Perhaps Centillion is reluctant to provide claim construction and its definition of terms for the Court and the defendants believing that it will avoid being estopped from creating different legal theories or definitions in this case or later cases." (Reply in Support of Defendants' Joint Motion for Expedited Ruling on the Insufficiency of Centillion's Opening Markman Brief (doc. no. 341), p. 3).

    Centillion asserted that, through the various claims charts it served on the defendants, it has already identified the relevant claims and elements, or sub-parts, of claims that it is asserting **11 and had adequately provided its construction of those claims and elements. In the materials submitted by Centillion at the hearing as Hearing Exhibit 1, are two claims charts for the '270 and '290 patents which Centillion produced to all parties in response to former-defendant MCI Worldcom's Interrogatory no. 4. MCI Worldcom asked Centillion to state its construction of each element of each claim of the patents that Centillion alleges were infringed by MCI Worldcom, including, but not limited to, identifying the structure, material, or acts in the patent specification that corresponds to any means-plus-function element of a claim. Centillion objected to the interrogatory on several grounds, but, subject to the objections, provided the claims charts as a "further response" to the interrogatory in light of its then-current knowledge of MCI Worldcom's product. While these charts appear to present some meanings of claims and references to the patent specifications — on the sufficiency of which the Court will not comment at this time — the charts were produced subject to Centillion's objections and reflect its past understanding of a former party's allegedly infringing product and its **12 past positions regarding construction. Centillion also submitted copies of charts it had served on the defendants which were intended to specify which features of each defendant's product infringed which claims or elements of claims of the patents

Case 3:02-cv-01723-AVC    Document 61    Filed 12/04/2003    Page 22 of 23

Page 4

138 F. Supp. 2d 1117, *1121; 2001 U.S. Dist. LEXIS 10116, **12

in issue. But while these charts serve the purpose of identifying which claim terms are at issue with respect to infringement, they are not sufficient for providing Centillion's construction of the relevant claims and elements of claims.

Asserting that its claims terms should be given their ordinary and accustomed meanings, Centillion also argued that the defendants should first propose any any unusual meanings they wish to ascribe to claim terms in order to more efficiently identify which terms are genuinely disputed and therefore require briefing and the Court's construction. In addition to improperly focusing on genuinely disputed meanings instead of genuinely disputed claims as the standard for the parties' briefing (at least the initial briefing) discussed above, this approach ignores what is often the crux of parties' *Markman* disputes: disputes over what the ordinary or accustomed meanings of claim terms are. What is self-evident **13 to an infringement accuser might not be to an alleged infringer, especially in application, as a review of the case law illustrates. See, *e.g.*, *Markman I, supra* (construction of "inventory"); *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 2000 U.S. Dist. LEXIS 7105, Cause No. IP 98-1108-C-H/G, Entry on Defendants' Motion for Summary Judgment of Noninfringement, 2000 WL 684182 (S.D. Ind., Feb. 9, 2000). By Centillion *1122 providing its constructions of all material terms of all claims and elements of claims that it is asserting the defendants infringed, the defendants will be able to determine which constructions they dispute and then can brief only those terms. The Court can then limit its construction to only those claims and terms that are genuinely disputed. In addition, because "claims are construed by the court as they would be understood by persons of skill in the field of the invention, for patents are written by and for skilled artisans", *Vivid Technologies*, 200 F.3d at 804, Centillion's explication of even the ordinary and accustomed meanings of asserted terms in a claim assists the Court because "judges are not usually **14 'conversant in the particular technical art involved,' or capable of reading the patent specification and claims as one skilled in the art might", *Charles E. Hill & Associates v. Compuserve*, 65 F. Supp. 2d 924, 928 (S.D. Ind. 1999). If it results that the defendants do not dispute Centillion's proposed ordinary and accustomed meaning of a term within an asserted claim and, therefore, the Court need not construe that particular term, the then-agreed construction might assist the Court's construction of disputed terms because claim terms are to be construed consistently with one another and with the overall purpose of the patent. *See Forest Laboratories, Inc. v. Abbott Laboratories*, 239 F.3d 1305, 1309–10 (Fed. Cir. 2001)

("We also construe independent claims consistently with the claims that depend from them"); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 1109, 118 S. Ct. 1039, 140 L. Ed. 2d 105 (1998); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir.) ("Interpretation of a disputed claim term requires reference not only **15 to the specification and prosecution history, but also to other claims"), *cert. denied*, 516 U.S. 987, 116 S. Ct. 515, 133 L. Ed. 2d 424 (1995); *Nichols v. Strike King Lure Co.*, 2000 U.S. Dist. LEXIS 15781, *18, No. CIV. A. 3:00-CV-1950-B, Memorandum Opinion and Order, 2000 WL 1593616, *6 (N.D. Texas, Oct. 25, 2000); *Leggett & Platt Inc. v. Hickory Springs Manufacturing Co.*, 2000 U.S. Dist. LEXIS 13063, *8, No. 99 C 2614, Memorandum Opinion and Order, 2000 WL 1269363, *3 (N.D. Ill., Sept. 5, 2000); *Purdue Pharma, L.P. v. Boehringer Ingelheim, GMBH*, 98 F. Supp. 2d 362, 375 (S.D. N.Y. 2000), *affirmed and remanded*, 237 F.3d 1359 (Fed. Cir. 2001); *Charles E. Hill & Assoc.*, 65 F. Supp. 2d at 927.

Centillion asked the Court to order the defendants to provide a full answer to its Interrogatory no. 18 before requiring Centillion to file a new *Markman* brief. The interrogatory asks: "For every claim of the Centillion patents, if you contend that you do not infringe such claim, explain why you do not infringe each element of each claim for each of the accused products. **16 " Because this interrogatory in effect seeks to shift the order and burdens of the *Markman* process, the request was denied. After the Court issues its *Markman* constructions, the defendants will be in a position to meaningfully answer this interrogatory.

In presenting its new *Markman* brief, Centillion is not limited to providing its constructions of the claim terms identified by the defendants in the March 13, 2001 Rankin–Wigman letter (Hearing Exhibit no. 2) but must provide its constructions of all material and relevant terms of all asserted claims. The Court admonishes Centillion not to provide minimalist interpretations in an attempt to effectively shift the initial burden to the defendants.

Finally, because "the scope of a means–plus–function claims is strictly limited to the 'corresponding structure, material or acts' described in the specification, and *1123 equivalents of that structure", *Jackson*, 139 F. Supp. 2d 1003, 2001 U.S. Dist. LEXIS 1807, 2001 WL 201372, *2 (applying 35 U.S.C. § 112, P 6), Centillion must identify the specific structures, materials, and acts of the specification that apply to each means–plus–function claim term construed.

138 F. Supp. 2d 1117, *1123; 2001 U.S. Dist. LEXIS 10116, **16

**Schedule**

Thirty days from **17 the date of the March 22, 2001 hearing, Centillion must file a new *Markman* brief setting forth its complete constructions of all terms in all asserted claims in conformity with the rulings set forth above. The defendants must file their responding briefs no later than 30 days after Centillion files its brief. Centillion shall have 15 days after the filing of each response brief to file a reply thereto.

No later than thirty days after filing its *Markman* reply briefs, Centillion shall make its disclosures under Fed.R.Civ.P. 26(a)(2) for *Markman* hearing experts. The defendants shall file their Rule 26(a)(2) *Markman* expert disclosures no later than 30 days after Centillion files its disclosures.

No later than 15 days after the defendants file their *Markman* response briefs, the parties shall file a joint notice of the earliest available times for the Court to convene a *Markman* hearing. By the same deadline, the parties shall file a joint motion for any necessary amendments to the case management plan.

The parties shall seek leave of Court if their *Markman* briefs will exceed 50 pages.

SO ORDERED this 2nd day of April, 2001.

KENNARD P. FOSTER, Magistrate Judge.  **18