IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

2004 MAR 19 P 4: 25

| | |
|---|---|
| EASCO HAND TOOLS, INC., ARMSTRONG TOOLS INC., KINGSLEY TOOLS INC., LEA WAY HAND TOOL CORPORATION, AND MATCO TOOLS CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>HU, HOU-FEI, a/k/a BOBBY HU,<br><br>Defendant. | Civil Action No. 3:02 CV 1723 (AVC)<br>Consolidated with Civil Action No. 3:02 CV 1747 (AVC)<br><br><br><br><br>March 19, 2004 |

**PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANT
HU'S MOTION TO DISMISS THE ORIGINAL 1723 CASE**

I.   **INTRODUCTION**

After making sweeping pre-litigation assertions that plaintiffs' (collectively "Easco") products infringed defendant Hu's '992 patent, and after litigating for a year and a half over those infringement claims, Hu informed Easco on or about February 4, 2004 that he intended to dismiss his '992 patent infringement and related trade secret claims (i.e., the counterclaims in the original 1723 action). Significantly, Hu announced to Easco his intention to dismiss the case only days before Hu was required, pursuant to the Court's scheduling order, to specify his infringement contentions regarding the '992 patent.

Easco does not object to Hu's motion insofar as it seeks the dismissal with prejudice of Hu's counterclaims against Easco. Easco's own claims, however, and in particular its inequitable conduct and attorneys' fees claims, against Hu should not be dismissed, because there remains a reasonable apprehension of litigation concerning these and related claims, and

resolving Easco's inequitable conduct claim, and its attendant claim for attorneys' fees, here in this action likely will resolve all outstanding issues.[1]

## II. BACKGROUND FACTS

### A. Hu's Offered Statements Of Non-Liabilty Merely Continue His Practice Of Repeatedly Changing Liability Contentions.

Before the '992 patent had even issued, and at least as early as November 2000, Hu repeatedly told Easco that many of its products including its "Reversible Gear Wrench," infringe what became the '992 patent. After listening to Hu's accusations of infringement for almost two years, Easco initiated the 1723 Action on September 26, 2002, seeking a declaratory judgment that (1) its products do not infringe the '992 patent, (2) the '992 patent is invalid, and (3) the '992 patent is unenforceable due to the inequitable conduct involved in its prosecution. (Complaint, ¶¶10-18.) Based on Hu's prelitigation accusations, Easco identified in discovery its "Reversible Gear Wrench" products (by model number) as those for which it sought a declaration of non-infringement. (Easco Response to Interrog. No. 1 in Defendant's First Set.) Hu subsequently asserted counterclaims of patent infringement and trade secret misappropriation. In his patent infringement counterclaim, however, Hu did not accuse Easco's Reversible Gear Wrench product but rather for the first time accused what Hu referred to as Easco's "Craftsman Socket Wrench," a completely separate product line. (Defendant's Original Counterclaim, ¶¶25-27.) In addition, Hu asserted vague but sweeping claims of trade secret misappropriation, with the claimed trade secrets allegedly relating to the technology of the '992 patent. (Id., ¶¶14-24.)

---

[1] In the event that this Court does dismiss Easco's declaratory judgment claims for lack of subject matter jurisdiction, such dismissal must be without prejudice. See Aerolineas Argentinas v. Pakistan Int'l Airlines, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("[I]n the absence of subject matter jurisdiction there can be no preclusive findings or conclusions on the merits, and dismissal for lack of jurisdiction is without prejudice."); Wheeler v. United States, 11 F.3d 156, 159 (Fed. Cir. 1993) ("[D]ismissals for lack of subject matter jurisdiction…are without prejudice.").

During the following year and a half of litigating this Action, Easco repeatedly pushed Hu, through both formal discovery requests and informal negotiations with his counsel, to specify his new beliefs by explaining how the Craftsman Socket Wrench infringed the '992 patent and detailing which trade secrets it incorporated. (See, e.g., Easco's First Set of Interrogatories Nos. 1, 2, 4 and Second Set of Interrogatories.) Hu repeatedly dodged Easco's efforts. Hu provided incomplete answers to interrogatories, which failed to specify any plausible infringement contentions that were consistent with his statements to the PTO during prosecution of the '992 patent, and which only vaguely described his alleged trade secrets by referring generally back to the language of the '992 patent itself. Hu also never explained why, despite nearly two years of accusations, he no longer believed Easco's Reversible Gear Wrench infringed the '992 patent or incorporated the related trade secrets.

Then, once the Court's deadline forcing Hu to specify in writing his infringement allegations approached, Hu dodged again. Apparently unable to explain how the Craftsman Socket Wrench infringed the patent (or employed Hu's alleged secrets), Hu announced he intended to unilaterally dismiss the case. In doing so, however, Hu seeks to preserve his ability to recast his accusations and once again sue Easco.

Both of the "statements of non-liability" offered by Hu in his motion represent attempts to preserve the ability to reopen suit. Hu's first statement promises in effect not to sue under the '992 patent for any existing Easco products, but only for new products having the "exact identical structure."[2] (Hu Motion, at 2-3.) Given the wrench product market described below,

---

[2] Hu provides no explanation for these undefined terms that on their face appear much more restrictive than ordinary patent law concepts of equivalence. See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1313 (Fed. Cir. 2003) ("Infringement under the doctrine of equivalents frequently turns on questions of fact, such as whether the allegedly infringing device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention."). Hu, notably, has not agreed not to sue for any structures that are equivalent or substantially the same as the products accused in the 1723 Action.

which often employs "new products" with only different names, product number designations, and/or slight structural modifications, Hu's restrictive terminology represents his effort to bring a new suit, likely in another jurisdiction, just as soon as Easco's ongoing activities generate such products.

Hu's second statement regarding the trade secrets he is willing to surrender is even more prone to abuse. Hu does not tie this statement to any of Easco's current products. (See Hu Motion, at 3.) Instead, Hu references his interrogatory responses "defining" the trade secrets at issue, which in turn simply reference the '992 patent. Hu's proffered Statement of Non-Liability with respect to his trade secret misappropriation claim is further deficient because its scope is dependent on the completeness of Hu's own interrogatory responses. Hu apparently wishes to preserve the opportunity to bring a new trade secret misappropriation claim with respect to the very same Easco products at issue in this case pursuant to any trade secrets he did not identify in his discovery responses. Easco does not know whether Hu's responses are complete. If they are incomplete, Hu can seek to sue on trade secrets that were not in fact disclosed in discovery in this case, and can at least contend that those trade secrets fall outside the scope of his Statement of Non-Liability. It is well established that a dismissal of claims operates as res judicata not only with respect to claims made but claims which could have been made. See, e.g., Samuels v. Northern Telecom, Inc., 942 F.2d 834, 836 (2d Cir. 1991); Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1986). Hu provides no authority for his attempt to avoid the ordinary effects of a dismissal with prejudice, and to the extent his proposed Statement of Non-Liability is an effort to do so, it should not be permitted.

### B.  The Wrench Product Market Facilitates Hu's Ability To Attempt Suit Again.

Easco manufactures and sells numerous different models and sizes of wrenches, under various brand names, that are based on the core designs contained in the Reversible Gear Wrench, and Craftsman Socket Wrench products, as well as other brands and models that are introduced periodically. To the extent that issues of infringement of the '992 patent or related trade secret misappropriation remain unresolved with respect to the core product designs at issue in this case, subsequent litigation remains likely. Hu can, and likely will, bring subsequent litigation in a forum of his choosing with respect to Easco products with the same core design, but with slight changes that render them not "exactly identical" to the products at issue and therefore outside of Hu's self-crafted "Statement of Non-Liability."

### C.  Hu's Purported Reason For Dismissal Is Not Credible And Attempts To Preserve His Ability To Sue Again.

Hu's asserted rational for seeking to dismiss this action because the potential recovery is not substantial enough rings hollow for numerous reasons. (See Hu Motion, at 2.) First, Hu bases this purported conclusion on unit sales information Easco produced in July 2003, and which covered only the period from approximately April 2002 through June 2003. By the time Hu's '992 infringement claim would proceed to trial under the Court's Scheduling Order, there would be almost two years of sales history in addition to the period that Easco has reported to Hu. Thus, a decision to abandon this lawsuit based on sales volume reported to date would be completely illogical, as it would ignore the certain fact that the sales volume at issue at trial would be dramatically higher.

Second, the timing of Hu's decision to abandon this case makes clear that it does not result from allegedly insufficient sales volume. Easco produced unit sales information in July 2003; yet Hu did not announce his intention to dismiss the case until eight months later.

Although Hu had in his possession in July 2003, all of the information upon which he purportedly bases his decision that the case is not economically worthwhile, he continued to expend money litigating this case for another eight months. Moreover, Hu announced his intention to dismiss this Action only two weeks before the parties' agreed date to supplement their sales and financial information. Hu did not wait until his counsel received and analyzed the details of all of Easco's 2003 sales, instead chosing to surrender based allegedly on older and more limited information. (See Hu Motion, at 2.) One would expect Hu to have waited the additional two weeks to receive the full sales picture before making such a drastic "business decision" to surrender his case.

Finally, even if Hu genuinely believed that sales now and through trial would be insufficient to justify proceeding with this case – an illogical conclusion given the information presently available to him – he would presumably nevertheless wish to proceed with trial to obtain an injunction prohibiting Easco from making post-judgment sales of the accused products, in order to protect his competitive position. Yet, if Hu's rationale for seeking a dismissal of this case is to be believed, he is foregoing potential injunctive relief with respect to the very products he has accused of patent infringement. Easco submits that Hu has concocted his position that proceeding with this case is not economically justified in an effort to avoid making an admission that would be used against him in any future suit he plans to file.

### D.  Hu's Ongoing Patent Prosecution Practices Enable Him To Attempt Suit Again.

Hu's ongoing patent prosecution practice appears designed to permit ongoing litigation against Easco. Hu has disclosed in discovery that he has filed continuation applications with respect to the '992 patent. These applications contain claims to the same invention as is disclosed in the '992 patent. Thus, the claims in Hu's continuation applications are similar but

-6-

not identical to those in the '992 patent. During discussions between the parties preceding Hu's motion to dismiss, the parties attempted but failed to reach agreement on a stipulation of dismissal. In the course of those negotiations, Easco expressed to Hu its interest in obtaining genuine closure and finality concerning the issues in this lawsuit. Accordingly, Easco sought a covenant not to sue from Hu that covered not only the '992 patent but related applications. Hu refused to provide such a covenant, and thereby created the inference that he intends to sue Easco for infringement on those continuation patents.

### E. Easco Reasonably Fears Another Suit By Hu.

Hu's likely strategy is to stop this litigation now, and then bring subsequent litigation in a forum of his choosing (1) when Easco introduces new products having comparable (but not exactly identical) structure, and/or (2) when Hu's continuation patents issue. To advance this strategy, Hu's proposed statements of non-liability are drawn narrowly to exclude from his covenant not to sue subsequent products containing even inconsequential design changes, any and all continuation patents, and related trade secret claims against all products. (See Hu Motion, at 2-3.) As a result, Easco has a reasonable apprehension of being sued again for infringement of the '992 patent and/or for allegedly misappropriating its technology, and of being sued under Hu's continuation patents. Consequently, Easco may have little choice but to initiate a new declaratory judgment action against Hu every time it introduces a new product comparable to those at issue in this case.

## III. ARGUMENT

### A. The Totality Of Hu's Conduct Creates An Ongoing Reasonable Apprehension Of Suit And Maintains An Actual Controversy.

Easco may maintain its declaratory judgment claims, despite Hu's offered statements of non-liability, if there remains (1) a reasonable apprehension that Easco will face an infringement

-7-

suit, and (2) present Easco activity that could constitute infringement, or Easco has taken concrete steps with the intent to conduct such activity. See BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). "[R]easonable apprehension of suit turns on the conduct of [Hu], while the infringement element depends on the conduct of [Easco]." Id. Both elements remain present here.

An accused infringer's reasonable apprehension of suit must be considered under the "totality of the circumstances." Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995). Taken together, Hu's conduct creates a reasonable apprehension of suit against Easco: Hu, throughout this litigation, has refused to specify any defensible grounds for claiming infringement and misappropriation. (See, supra, § II.A.) Hu has periodically changed his general assertions, both as to the products he accuses and the secrets he believes exist and Easco misused. (Id.) When forced by the Court's Scheduling Order to define his contentions in writing, Hu instead unilaterally surrendered his claims. (Id.) His purported financial reasons for giving up are inconsistent with the facts and highly suspect. (See, supra, § II.B.) The form of his "statements of non-liability" appear to be attempts to preserve the ability to sue Easco's products. (See, supra, §§ II.A-C.) By his own admission, Hu is currently prosecuting new continuation patents on the same technology -- patent claims that Hu has refused to surrender here, and which seem designed to target Easco. (See, supra, § II.D.)

Easco's continuing sales of existing products (as well as its introduction of any new, even slightly different products) thus constitute activity that could lead to a misappropriation or infringement claim. As discussed above, Hu does not even propose to exempt Easco's existing products explicitly from future suits over trade secrets related to the '992 patent. Moreover, even

slight, inconsequential design changes to Easco products could allow Hu to circumvent his own self-serving Statements of Non-Liability in this case.

These circumstances point in only one direction – Hu's offer of dismissal here is no resolution, but rather another strategic move to avoid specifics while maintaining the ability to harass Easco again with a new suit, and most likely to do so in a more favorable jurisdiction. None of the cases cited by Hu in his motion, present such a complete picture of an ongoing, actual controversy. Thus, this Court retains jurisdiction over Easco's claims.

### B. Preserving Easco's Inequitable Conduct Claim And Attendant Claim For Attorneys' Fees Would Permit A Conclusion Of These Issues Between The Parties.

The danger to Easco lies in Hu asserting either (1) the claims of the current '992 patent against similarly (but not exactly) structured products, or (2) new claims to the same invention, but which are contained in a continuation patent, against any of Easco's products. The inequitable conduct Easco has currently pled in this Action, if Easco were to maintain and prove at trial, would, however, prevent Hu from raising either type of suit again.

In its complaint, Easco alleges:

> The claims of the '992 patent are unenforceable, in that defendant, and/or his attorney prosecuting the application that matured into the '992 patent, committed inequitable conduct before the U.S. Patent and Trademark Office in obtaining the '992 patent, in that Defendant and/or his attorney (1) knew of U.S. Patent 6,134,990, U.S. Patent 5,533,427, U.S. Patent 5,636,557, and/or the Gear Wrench non-reversible ratcheting wrench sold by one or more of Plaintiffs and (2) failed to disclose such prior art to the United States Patent and Trademark Office with, upon information and belief, the intent to deceive the Patent and Trademark Office. The withheld prior art was material to the examination of the application and was not cumulative.

(Complaint, ¶18). This inequitable conduct, if proven, would permeate Hu's prosecution of related claims in all continuation patents and render them unenforceable. See Consolidated Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 811-12 (Fed. Cir. 1990). Hu cannot avoid

-9-

the effects of his '992 inequitable conduct by dropping his claims under the '992 patent, obtaining similar claims in a continuation application, and then suing Easco on these new claims. See Driscoll v. Cebalo, 731 F.2d 878, 884 (Fed. Cir. 1984) (holding patentee cannot excuse his failure to disclose material prior art during prosecution of a parent application by substituting related claims in a later application and not calling his failure to disclose to the attention of the PTO). To do so would be an improper attempt to "avoid the consequences of [his inequitable] conduct through a scheme of divisional and continuation applications." Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd., 24 F. Supp. 2d 537, 544 (E.D. Va. 1998). "The law does not countenance such a manipulation of the patent process." Id. (holding patent-in-suit unenforceable due to the patentee's inequitable conduct of omitting known prior art from the prosecution of earlier patent applications in the same prosecution claim). Patentees, having committed inequitable conduct before the PTO, may not decline to cure it, and instead seek to conceal it by prosecuting and then asserting a continuation patent. Id. ("[C]ure cannot be achieved through manipulation of patent prosecution procedures, such as concealing or amending claims or filing continuation and divisional applications.")

The Federal Circuit has identified as "exceptional" those cases involving, among other things, "inequitable conduct before the [Patent Office]." See, e.g., Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1246 (Fed. Cir. 2003). A court may award attorney's fees to the prevailing party under 35 U.S.C. § 285 in "exceptional" patent infringement actions. See 35 U.S.C. § 285. Thus, Easco has a meritorious claim for attorneys' fees under Section 285 based upon Hu's inequitable conduct described above. See F.B. Leopold Co., Inc. v. Roberts Filter Mfg. Co., Inc., 1997 U.S. App. LEXIS 16233, at *19 (Fed. Cir. July 2, 1997) (affirming award of

attorney's fees under Section 285 upon finding of inequitable conduct); Fox Indus., Inc. v. Structural Pres. Sys., Inc., 922 F.2d 801, 804 (Fed. Cir. 1990) (same).[3]

Even if this Court dismisses Hu's counterclaim and Easco's action for a declaratory judgment, it retains subject matter jurisdiction over Easco's claim for attorney's fees under 35 U.S.C. § 285. See Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc., No. 96-101-SLR, 1997 U.S. Dist. LEXIS 21016, at *22 (D. Del. Dec. 23, 1997) (holding that dismissal of a declaratory judgment action and infringement counterclaim "does not eliminate this court's jurisdiction to preside over a motion for attorney's fees" under Section 285); Vardon Golf Co., Inc. v. Allied Golf Corp., No. 94 C 1332, 1995 U.S. Dist. LEXIS 16380, at *7 (N.D. Ill. Nov. 6, 1995) ("Dismissal of plaintiff's patent infringement claim and defendant['s] . . . counterclaim does not eliminate this court's jurisdiction to preside over motions for attorney's fees" under Section 285.). This is so because "a motion for attorney's fees brought under 35 U.S.C. § 285[] is a collateral issue which the court may consider after the action is no longer pending." Vardon, 1995 U.S. Dist. LEXIS 16380, at *7. Therefore, even if the Court dismisses the underlying liability claims and defenses of the parties, it still maintains jurisdiction over, and should decide, Easco's claims for attorneys' fees incurred in this Action.

---

[3] This case is also "exceptional," as defined by Section 285, because Hu's initiation and maintenance of his infringement claim constitutes "unjustified, vexatious and bad faith litigation." In fact, Hu's motion to voluntarily dismiss his claims, after litigating, for over a year and a half, based not upon the discovery of any new information but rather on his own strategic goals, strengthens Easco's entitlement to fees. Hu's conduct demonstrates that Hu knew, or at least should have known, that he had no good faith basis upon which to initiate and maintain his infringement claim. As a result, Easco believes Hu has engaged in vexatious litigation and, accordingly, Easco is entitled to its attorney's fees under Section 285. See, e.g., Phonometrics, 350 F.3d at 1248 (affirming award of attorney's fees under Section 285 upon finding that continued pursuit of action was "unjustified, vexatious and [in] bad faith"); Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 810-11 (Fed. Cir. 1990) (awarding defendant attorney's fees under Section 285 because plaintiff engaged in "bad faith litigation").

## IV.  CONCLUSION

Based on the foregoing grounds, Easco requests that the Court deny Hu's motion to dismiss Easco's claims absent a broader agreement or order not to sue regarding any of the trade secrets that were or could have been alleged by Hu in the 1723 Action. The Court should also deny Hu's motion to dismiss Easco's inequitable conduct claims and its attendant claims for attorneys' fees.

Respectfully submitted,

By: _____
Francis H. Morrison, III (ct 04200)
*fhmorrison@dbh.com*
Matthew J. Becker (ct 10050)
*mjbecker@dbh.com*
Day, Berry & Howard LLP
CityPlace I
Hartford, CT  06103
860-275-0100 (Telephone)
860-2675-0343 (Fax)

March 19, 2004

## CERTIFICATE OF SERVICE

    I, Matthew J. Becker, hereby certify that I have this 19th day of March, 2004, served copies of the within Plaintiffs' Partial Opposition to Defendant Hu's Motion to Dismiss The Original 1723 Case on the following individuals by mailing copies thereof, First Class Mail, postage prepaid to:

J. Hoke Peacock, III, Esq.
Randall W. Wilson, Esq.
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Jonathan Pierce, Esq.
Michael F. Heim, Esq.
Conley, Rose & Taylor, P.C.
Chase Tower
600 Travis, Suite 700
Houston, TX  77002

David B. Zabel, Esq.
Cohen and Wolf, P.C.
115 Broad Street
Bridgeport, CT  06604

_____
Matthew J. Becker