class. This designation, however, is not necessarily the only pertinent class and subclass in which the design could be properly classified since for some U.S. Design Classification designations, there is no direct parallel within the Locarno system.

## 903.10  Duties of the Post Classifier

Examiners should contact their post classifier on all classification problems.

A post classifier is responsible for:

(A) The technical accuracy, adequacy, and completeness of all search systems in his or her group including the monitoring of any need for major and minor reclassification projects including mechanized systems.

(B) The full range of classification administration functions, including the resolution of classification disputes on pending applications, guidance on classification matters to both examiners and the public, outlining fields of search, and answering examiners' requests for advice as to the proper classification of allowed applications.

(C) The inspection of issuing applications to determine the accuracy and adequacy of original and cross-reference classification, including working closely with the supervisory patent examiners and Technology Center (TC) Directors to ensure feedback to correct problem areas.

(D) Determination of the training needs of the personnel in his or her assigned group relative to principles of classification and supplying this training through formal and informal channels.

Generally, the post classifiers are to aid the examiners in the use, maintenance, and perfection of the classification system.

## 904  How to Search

The examiner, after having obtained a thorough understanding of the invention disclosed and claimed in the nonprovisional application, then searches the prior art as disclosed in patents and other published documents, i.e., nonpatent literature (NPL). Any document used in the rejection of a claim is called a reference.

In all continuing applications, the parent applications should be reviewed by the examiner for pertinent prior art. Where the cited prior art of a parent application has been reviewed, this fact should be made of record in accordance with the procedure set forth at paragraph II.(E) of MPEP § 719.05.

The first search should be such that the examiner need not ordinarily make a second search of the prior art, unless necessitated by amendments to the claims by the applicant in the first reply, except to check to determine whether any reference which would appear to be substantially more pertinent than the prior art cited in the first Office action has become available subsequent to the initial prior art search. The first search should cover the invention as described and claimed, including the inventive concepts toward which the claims appear to be directed. It should not be extended merely to add immaterial variants.

In the first action on the merits of an application, the examiner shall make an initial endorsement in black ink, in the space provided on the right outside panel of the file wrapper, of the classes and subclasses of domestic and foreign patents, abstract collections, and publications in which the search for prior art was made. Other information collections and sources in which the search for prior art was made must also be identified by the examiner. The examiner must also indicate the date(s) on which the search was conducted. Note MPEP § 719.05.

In subsequent actions, where the search is brought up to date and/or where a further search is made, the examiner must endorse and initial on the file wrapper that the search has been updated and/or identify the additional field of search. See MPEP § 719.05. Any search updates should include all of the databases and the search queries and classifications employed in the original search.

## 904.01  Analysis of Claims

The breadth of the claims in the application should always be carefully noted; that is, the examiner should be fully aware of what the claims do *not* call for, as well as what they do require. During patent examination, the claims are given the broadest reasonable interpretation consistent with the specification. See *In re Morris*, 127 F.3d 1048, 44 USPQ2d 1023 (Fed. Cir. 1997). See MPEP § 2111 - § 2116.01 for case law pertinent to claim analysis.

### 904.01(a)  Variant Embodiments Within Scope of Claim

Substantially, every claim includes within its breadth or scope one or more variant embodiments that are not disclosed in the application, but which would anticipate the claimed invention if found in a reference. The claim must be so analyzed and any such variant encountered during the search should be recognized.

In each type of subject matter capable of such treatment (e.g., a machine or other apparatus), the subject matter as defined by the claim may be sketched or diagrammed in order to clearly delineate the limitations of the claim. Two or more sketches, each of which is as divergent from the particular disclosure as is permitted by claim recitation, will assist the examiner in determining the claim's actual breadth or scope. However, an applicant will not be required to submit such sketches of claim structure. *In re Application filed November 16, 1945*, 89 USPQ 280, 1951 C.D. 1, 646 O.G. 5 (Comm'r Pat. 1951).

### 904.01(b)  Equivalents

All subject matter that is the equivalent of the subject matter as defined in the claim, even though specifically different from the definition in the claim, must be considered unless expressly excluded by the claimed subject matter. See MPEP § 2181 - § 2184 for a discussion of equivalents when a claim employs means or step plus function terminology.

### 904.01(c)  Analogous Arts

Not only must the art be searched within which the invention claimed is classifiable, but also all analogous arts regardless of where classified.

The determination of what arts are analogous to a particular claimed invention is at times difficult. It depends upon the necessary essential function or utility of the subject matter covered by the claims, and not upon what it is called by the applicant.

For example, for search purposes, a tea mixer and a concrete mixer may both be regarded as relating to the mixing art, this being the necessary function of each. Similarly a brick-cutting machine and a biscuit cutting machine may be considered as having the same necessary function. See MPEP § 2141.01(a) for a discussion of analogous and nonanalogous art in the context of establishing a *prima facie* case of obviousness under 35 U.S.C. 103. See MPEP § 2131.05 for a discussion of analogous and nonanalogous art in the context of 35 U.S.C. 102.

### 904.02  General Search Guidelines

In the examination of an application for patent, an examiner must conduct a thorough search of the prior art. Planning a thorough search of the prior art requires three distinct steps by the examiner: (A) identifying the field of search; (B) selecting the proper tool(s) to perform the search; and (C) determining the appropriate search strategy for each search tool selected. Each step is critical for a complete and thorough search.

When determining the field of search, three reference sources must be considered - domestic patents (including patent application publications), foreign patent documents, and nonpatent literature (NPL). None of these sources can be eliminated from the search unless the examiner has and can justify a reasonable certainty that no references, more pertinent than those already identified, are likely to be found in the source(s) eliminated. The search should cover the claimed subject matter and should also cover the disclosed features which might reasonably be expected to be claimed. The field of search should be prioritized, starting with the area(s) where the invention would most likely be found in the prior art.

Having determined the field of search, the examiner should then determine what search tools should be employed in conducting the search. Examiners are provided access to a wide variety of both manual and automated search tools. Choice of search tools is a key factor in ensuring that the most relevant prior art is found during the search. The choice of search tools to be used is based on the examiner's knowledge of the coverage, strengths and weaknesses of the available search tools that are appropriate for use in an examiner's assigned art. For example, a search tool may cover foreign patent documents; but, if that coverage does not meet the examiner's current search needs, this should be taken into consideration by the examiner who will take recourse to employ other search tools in order to remedy the deficiency.

Search tool knowledge is particularly important for examiners in arts (e.g., very active, high technology) where patent documents may seriously lag invention

and, consequently, represent a reference source of limited value. These examiners must take special care to ensure that their searches include consideration of NPL and employ the effective use of tools specialized to cover NPL pertinent to their search needs.

Search needs in some technologies, e.g., chemical structures, DNA sequences, are very specialized and can only be met through use of specific search tools specially constructed and maintained to respond to those needs. These tools cover all three reference sources - domestic patents (including patent application publications), foreign patent documents, and NPL - and their use may be deemed sufficient for search of claimed inventions in such technologies.

In recognition that there are many available NPL search tools and their use is often complex, examiners have been provided and are encouraged to use the services of trained professional on-line search personnel located in the Technology Centers (Information Technology Resource Person (ITRP)) and in the Scientific and Technical Information Center (STIC) for NPL searching. See MPEP § 901.06(a) for services available in STIC.

In crowded, highly developed arts where most claimed inventions are directed to improvements, patent documents, including patent application publications, may serve as the primary reference source. Search tool selection in such arts may focus heavily on those providing patent document coverage.

Automated search tools covering patent documents usually provide both a classified and text search capability. Text search can be powerful, especially where the art includes well-established terminology and the search need can be expressed with reasonable accuracy in textual terms. However, it is rare that a text search alone will constitute a thorough search of patent documents. Some combination of text search with other criteria, in particular classification, would be a normal expectation in most technologies.

Examiners will recognize that it is sometimes difficult to express search needs accurately in textual terms. This occurs often, though not exclusively, in mechanical arts where, for example, spatial relationships or shapes of mechanical components constitute important aspects of the claimed invention. In such situations, text searching can still be useful by employing broader text terms, with or without classification parameters. The traditional method of browsing all patent documents in one or more classifications will continue to be an important part of the search strategy when it is difficult to express search needs in textual terms.

Having determined what search tool(s) should be used to conduct the search, the examiner should then determine the appropriate search strategy for each search tool selected. The appropriate search strategy should be determined by the examiner on a case-by-case basis along with consultation with other examiners and/or supervisory patent examiners, where appropriate.

In order for examiners to acquire specialized skills needed to determine an appropriate field of search in their specific arts, each Technology Center may develop supplemental specific guidance and training for its examiners. This training will augment general training and information on search tools that is normally provided through the Patent Academy and Search and Information Resources Administration.

## 904.02(a)   Classified Search

A proper field of search normally includes the subclass in which the claimed subject matter of an application would be properly classified. It is not necessary to search areas in which it could reasonably have been determined that there was a low probability of finding the best reference(s).

In outlining a field of search, the examiner should note every class and subclass under the U.S. Patent Classification system and other organized systems of literature that may have material pertinent to the subject matter as claimed. Every subclass, digest, and cross-reference art collection pertinent to each type of invention claimed should be included, from the largest combination through the various subcombinations to the most elementary part. The field of search should extend to all probable areas relevant to the claimed subject matter and should cover the disclosed features which might reasonably be expected to be claimed. The examiner should consult with other examiners and/or supervisory patent examiners, especially with regard to applications covering subject matter unfamiliar to the examiner.

The areas to be searched should be prioritized so that the most likely areas of finding relevant prior art are searched first.