IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EASCO HAND TOOLS, INC., ARMSTRONG TOOLS INC., KINGSLEY TOOLS INC., LEA WAY HAND TOOL CORPORATION, AND MATCO TOOLS CORPORATION, )))))) | Civil Action No.  3:02 CV 1723 (AVC) |
| Plaintiffs, )) | |
| vs. )) | |
| HU, HOU-FEI, a/k/a BOBBY HU, )) | May 14, 2004 |
| Defendant. )) | |

FILED
2004 MAY 18  P 12: 26
U.S. DISTRICT COURT
HARTFORD, CT.

---

## DEFENDANT HU'S REPLY IN SUPPORT OF HIS *MARKMAN* BRIEF ON CLAIM CONSTRUCTION

---

J. Hoke Peacock III
Federal Bar No. ct24230
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096

Michael F. Heim, Esq.
Federal Bar No. ct22416
Jonathan M. Pierce, Esq.
Federal Bar No. ct24417
CONLEY ROSE, P.C.
7100 JP Morgan Chase Tower
Houston, Texas 77002-2912

David B. Zabel, Esq.
Federal Bar No. ct01382
COHEN AND WOLF, P.C.
1115 Broad Street
Bridgeport, Connecticut 06604

Attorneys for Defendant and Counter-Plaintiff,
Hou-Fei Hu, a/k/a Mr. Bobby Hu



125809.04/2186.00200

# TABLE OF CONTENTS

I.  SUMMARY ...........................................................................................................1

II. HU'S CONSISTENTLY FOLLOWS THE CLAIM CONSTRUCTION PATH SET FORTH BY THE FEDERAL CIRCUIT IN *TEXAS DIGITAL* .......................................2

III. "RATCHETING TOOL" ........................................................................................3

    A.  The Preamble Does Not Set Forth The Intended Use Or Purpose Of The Claim, And Thus Is A Limitation ...........................................................................3

    B.  Hu's Proposed Construction of "Ratcheting" Should Be Adopted Over Plaintiffs' Construction ...........................................................................................3

    C.  Hu's Proposed Construction of "Tool" Should Be Adopted .............................4

        1.  Hu's Choice Of Dictionary Definition Is Proper ...........................................4

        2.  The Intrinsic Evidence Supports Hu's Construction ......................................5

    D.  The Prior Art Classes Searched By The Examiner Are Relevant To Claim Construction ...........................................................................................................6

    E.  Plaintiffs' Choice Of Dictionaries For Other Claim Limitations Shows That Hu's Construction Is Proper ...................................................................................6

IV. "DRIVE MEMBER" ...............................................................................................7

    A.  Hu's Proposed Construction of "Drive" Must Be Adopted ...............................7

    B.  Plaintiffs' Proposed Construction of "Drive" Must Be Rejected .....................8

        1.  Plaintiffs' Fail To Follow The *Texas Digital* Claim Construction Framework ...........................................................................................................8

        2.  Plaintiffs' Construction Of "Drive" Renders The Term "Member" Superfluous ...........................................................................................................9

    C.  The Specification Does Not Limit "Drive Member" To A Shaft, Beam, Or Column With An Extended End ..............................................................................9

    D.  Plaintiffs' Argument That The '991 And '992 Patents Support Plaintiffs' Construction Must Be Rejected ............................................................................11

    E.  Plaintiffs' Argument That The Claims Are Limited By The Summary Or The Specification Is Wrong ...............................................................................13

    F.  35 U.S.C. §112, ¶ 6 Does Not Apply ................................................................16

    G.  The Federal Circuit Does Not Require The Type Of Structural Characteristics Proposed By Plaintiffs ...............................................................17

V.  "MOUNTED" ........................................................................................................17

    A.  Hu's Construction Does Not Render Other Portions of the Claim Superfluous .........................................................................................................17

    B.  Plaintiffs' First Proposed Definition Must Be Rejected ..................................18

|  | C. | Hu's Would Agree to Plaintiffs' Second Proposed Definition | 18 |
| VI. | "BEARING" | | 19 |
|  | A. | Plaintiffs' Proposed Construction Must Be Rejected Because It Read the Preferred Embodiments Into the Claim | 19 |
|  | B. | Plaintiffs' Proposed Construction Must Be Rejected Because It Will Not Assist The Jury | 19 |
| VII. | CONCLUSION | | 20 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EASCO HAND TOOLS, INC., ARMSTRONG TOOLS INC., KINGSLEY TOOLS INC., LEA WAY HAND TOOL CORPORATION, AND MATCO TOOLS CORPORATION, | ) ) ) ) ) | Civil Action No. 3:02 CV 1723 (AVC) |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| HU, HOU-FEI, a/k/a BOBBY HU, | ) ) | May 14, 2004 |
| Defendant. | ) ) ) | |

## DEFENDANT HU'S REPLY IN SUPPORT OF HIS *MARKMAN* BRIEF ON CLAIM CONSTRUCTION

Pursuant to the Court's scheduling order, Defendant ("Hu") respectfully submits this Reply in support of the *Markman* Brief on Claim Construction ("HU'S BRIEF"), and in response to Plaintiffs' Claim Construction Memorandum of Law ("PLAINTIFFS' BRIEF"), and respectfully avers:

## I.    SUMMARY

Plaintiffs argue that Hu has taken inconsistent approaches in arriving at his proposed constructions. Plaintiffs argue that this alleged inconsistency stems from Hu's desire to avoid the prior art. Plaintiffs' arguments are wrong. Hu consistently follows the claim construction path set forth by the Federal Circuit in *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002). On the other hand, Plaintiffs do not follow this clear path, but instead embark on a path that has a predetermined result – attempting to avoid a clear finding of infringement. Once the proper path is followed, Hu respectfully suggests that his proposed constructions should be adopted by

this Court.

## II.    HU'S CONSISTENTLY FOLLOWS THE CLAIM CONSTRUCTION PATH SET FORTH BY THE FEDERAL CIRCUIT IN *TEXAS DIGITAL*

Plaintiffs argue that Hu's claim construction arguments for "tool" and "drive member" are inconsistent. To the contrary, it is Plaintiffs who are inconsistent. Hu marches step-by-step through the claim construction process as set forth by the Federal Circuit's 2002 decision in *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 1058 (2003). *Texas Digital* represents a sea change in the law of claim construction. Before *Texas Digital*, the path for proper construction of claims was ambiguous. After *Texas Digital*, the path is clear. Hu's proposed constructions follow this clear path.

Under *Texas Digital*, the claim terms "bear a 'heavy presumption' that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Id.* at 1202. The Court may look to dictionaries, treatises, and encyclopedias to establish the ordinary and customary meaning of particular claim terms. *Id.* Further, "the intrinsic record also must be examined in every case to determine whether the presumption of ordinary and customary meaning is rebutted." *Id.* at 1204. The intrinsic record includes: (1) the claim language itself; (2) the specification of the patent; and (3) the patent's prosecution history. *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Federal Circuit has issued specific guidelines to assist courts in properly using the intrinsic record in claim construction.

One reason to consult the intrinsic record is to determine "which of the different possible dictionary meanings of the claim terms in issue is most consistent with the use of the words by the inventor." *Texas Digital*, 308 F.3d at 1203. Where dictionaries provide multiple definitions, the claim term may be construed to encompass all such definitions, provided the definitions are

consistent with the use of the words in the "intrinsic record." *Id.* "If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." *Id.* Applying these principles, Hu respectfully suggests that his constructions be adopted.

## III.     "RATCHETING TOOL"

### A.     The Preamble Does Not Set Forth The Intended Use Or Purpose Of The Claim, And Thus Is A Limitation

In an attempt to convince this Court that the preamble is not a claim limitation, Plaintiffs contend that "[t]he term 'ratcheting tool' describes only the intended use of the invention, the use of the reversible ratcheting pawl technique to turn a drive member in a ratcheting tool...." PLAINTIFFS' BRIEF, p.11 n.7. Contrary to Plaintiffs' contention, the "tool" portion of "ratcheting tool" is a structure, rather than an intended use. Plaintiffs fail to offer a single case where the Federal Circuit concluded that a structural component - such as a "ratcheting tool" – actually described a purpose or intended result. In fact, in the only case cited by Plaintiffs, the preamble phrase at issue was "producing on a photoreceptor an image of generated shape made up of spots," which the Federal Circuit concluded was a claim limitation. *Id.* at 1306. Therefore, as explained in Hu's original Brief, the phrase "ratcheting tool" is a limitation of the claim.

### B.     Hu's Proposed Construction of "Ratcheting" Should Be Adopted Over Plaintiffs' Construction

Plaintiffs do not provide any reason why Hu's proposed construction of the term "ratcheting" should not be adopted by this Court. In fact, Plaintiffs acknowledge that "[b]oth constructions define the ratcheting operation similarly." PLAINTIFFS' BRIEF, p. 11. However, Plaintiffs' definition is not as straightforward as Hu's. Although Plaintiffs argue that this fact should not influence the Court's construction, Hu disagrees.

The goal is to arrive at constructions that are correct and that the jury can understand because the Court's constructions will be provided to the jury. *See American Fur Co. v. United States*, 27 U.S. 358, 369 (1829) ("If we misunderstand the meaning of this instruction, it is so probable that it might have been misunderstood by the jury, that justice demands a re-trial of the cause."); *DeLima v. Trinidad Corp.*, 302 F.2d 585, 587 (2d Cir. 1962) (Marshall, J.) ("At best, it was likely to leave the jury highly confused, that alone being grounds for reversal.").

Below are Hu's and Plaintiffs' proposed constructions of "ratcheting":

Hu:             "engaging attached bar or wheel with a pawl." HU'S BRIEF, p. 9.

Plaintiffs:     "a bar or wheel having inclined teeth with which a pawl interacts so that
                motion can be imparted to the wheel or bar." PLAINTIFFS' BRIEF, p. 11.

Hu and Plaintiffs agree that these definitions each define "ratcheting" similarly. If the Court also agrees, then Hu respectfully suggests that Hu's construction be adopted because it will be more easily understood by the jury.

## C.    Hu's Proposed Construction of "Tool" Should Be Adopted

With respect to "tool," Plaintiffs argue that: (1) Hu wrongly employs general dictionary definitions different technical definitions and then arbitrarily modifies these definitions to suit his purpose; and (2) the language "held in and worked by the hand" is neither addressed in nor supported by the intrinsic evidence. PLAINTIFFS' BRIEF, p.12. Hu addresses these in turn below.

### 1.    Hu's Choice Of Dictionary Definition Is Proper

Plaintiffs' boldly proclaim that Hu ignores Federal Circuit precedent in looking to Webster's Unabridged Dictionary for the definitions of the terms "ratchet" and "tool." PLAINTIFFS' BRIEF, p. 13. First, "tool" is an ordinary, every-day term, rather than a "technical" terms as Plaintiffs suggest. As evidence, the Federal Circuit has defined terms that are unquestionably more "technical" than "tool" by using general dictionaries. For example, as

recently as April 2, 2004, the Federal Circuit defined the term "hydrosol" using *Webster's Third New International Dictionary*. *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308-09 (Fed. Cir. 2004). Likewise, less than one month earlier, the Federal Circuit used *Webster's Third New International Dictionary* to define the term "polygon" in the context of a patent directed to a semiconductor. *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1370-71 (Fed. Cir. 2004); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001) (defining the terms "wrapped," "flexion," "angular," and "surface" using *Webster's New Collegiate Dictionary* in the context of a patent directed to computer mouse design). Therefore, Hu's use of *Webster's* is proper.

### 2.    The Intrinsic Evidence Supports Hu's Construction

Plaintiffs boldly, and erroneously, proclaim that "nothing in the patent specification limits the purported invention to a handheld tool." PLAINTIFFS' BRIEF, p. 15. Following *Texas Digital*, Hu looked to the specification to determine if other definitions were consistent. As explained in this Brief, and below, they are not. First, each and every Figure of the '387 Patent depicts only a tool "held in or worked by the hand."[1] Second, the patent examiner searched subclasses are directed to ratcheting wrenches.[2] Third, the background of the invention discloses a wide variety of "ratcheting tools," each of which is a wrench.[3] Simply put, it is implausible that one skilled in the art who reads the '387 Patent specification would believe that the term "tool" is anything but a wrench (*i.e.*, an implement used in and worked by the hand).

---

[1]    *See* '387 Patent, Figures.

[2]    HU'S BRIEF, Ex. A, p. 1.

[3]    '387 Patent, col. 1, ll. 11-19.

**D.     The Prior Art Classes Searched By The Examiner Are Relevant To Claim Construction**

Plaintiffs argue that the classes searched by the patent examiner who reviewed and analyzed the application that issued as the '387 Patent are not relevant. Although Hu has not found any cases specifically discussing this issue, Hu respectfully submits that the examiner's fields of search are highly relevant. The examiner is the person who is charged with reviewing the patent application and determining whether the invention described therein is patentable. In accomplishing this task, the examiner is required to "note every class and subclass under the U.S. Patent Classification System and other organized systems of literature that *may have been material pertinent to the subject matter claimed.*"  Ex. F to HU'S BRIEF, § 904.02(a) (emphasis added). Given that the examiner noted only a hand tool class (81) and searched only ratcheting wrench assemblies (60, 61, 62, 63, 63.1, and 63.2), it follows that the person charged with determining patentability thought the invention was limited to hand tools. This fact is certainly relevant to claim construction.

**E.     Plaintiffs' Choice Of Dictionaries For Other Claim Limitations Shows That Hu's Construction Is Proper**

Despite Plaintiffs' attempt to convince this Court that "tool" is not limited to hand tools, Plaintiffs themselves do something very curious – they choose their definitions from the portions of their "technical" dictionaries directed to wrenches (*i.e.*, implements used in and worked by the hand). For example, when Plaintiffs define "drive," they do so by referring to passages from a chapter of the *TAB Handbook of Hand and Power Tools* entitled "**Wrenches**, Bolts and Nuts." Ex. I to PLAINTIFFS' BRIEF (emphasis added). Additionally, although there are 11 specific definitions for "drive" in Plaintiffs' other source - the *Dictionary of Automotive Terms*, Plaintiffs choose the only definition directed to a wrench. *Id.* Thus, when it suits Plaintiffs' needs, they acknowledge

that the '387 Patent is limited to hand tools.

## IV.    "DRIVE MEMBER"

### A.    Hu's Proposed Construction of "Drive" Must Be Adopted

Plaintiffs condemn Hu for using what they coin as "general" dictionaries to define "drive" and "member." First, drive is not a technical term that requires use of a "technical" dictionary. *See Novartis*, 363 F.3d at 1308-09 (defining "hydrosol" using Webster's Third New International Dictionary). Second, with respect to the term "drive," Plaintiffs' own allegedly "technical" dictionary contains a definition (number 3) that is virtually identical to that proposed by Hu:

| | |
|---|---|
| Hu: | "to cause to move by force or compulsion and/or to guide the movement of." HU's BRIEF, p. 17. |
| Plaintiffs' Definition No. 3: | "to cause a wheel, shaft, etc. to turn or rotate." Exhibit J to PLAINTIFFS' BRIEF, Definition No. 3. |

Given that Plaintiffs' "technical" dictionary contains a definition virtually identical with Hu's definition, it is disingenuous for Plaintiffs to suggest that Hu "attempts to cobble together a broader definition from definitions he finds in general English dictionaries." PLAINTIFFS' BRIEF, pp. 18-19. More importantly, Plaintiffs fail to offer any explanation as to why definition number 3 from its own "technical" source is inconsistent with the specification. In fact, as with Hu's definition, definition number 3 is consistent with the specification. *See, e.g.,* '387 Patent, col. 6, ll. 4-6.

Additionally, Plaintiffs' argument that Hu's chosen definitions are inapplicable to tool design is wrong. Plaintiffs attempt to support their argument by citing examples of the general definition. As explained in the Brief, the specification is consistent with "to send, expel, or otherwise move by force or compulsion" and with "to cause and guide the movement of." *See* Hu's Brief, p. 17. Plaintiffs have failed to cite any facts to the contrary.

**B.    Plaintiffs' Proposed Construction of "Drive" Must Be Rejected**

**1.    Plaintiffs' Fail To Follow The *Texas Digital* Claim Construction Framework**

Plaintiffs utilize the *Dictionary Of Automotive Terms* as one of its sources for its proposed construction of the term "drive." Ex. J, PLAINTIFFS' BRIEF. As used in that source, "drive" has the following possible definitions:

(1)    to travel in a car as in the expression, "We drove to Chicago."

(2)    to operate a vehicle as in the expression, "Martha drove to New York by herself."

(3)    to cause a wheel, shaft, etc. to turn or rotate.

(4)    to propel a vehicle.

(5)    a journey in a car as in "The drive to Chicago was uneventful."

(6)    to go for a drive as in, "We went for a drive last Sunday."

(7)    A stretch of private road leading to a house (i.e., driveway).

(8)    A means of transmitting power or motion as in "The drive is controlled by a servo switch."

(9)    A tool which has a square end (1/4 inch, 3/8 inch, or 1/2 inch) which fits into a recess in a corresponding socket for the installation or removal of nuts and bolts.

(10)   a die position.

(11)   One of the forward gears marked on the gear selector of an automatic transmission.

Given that this source refers to eleven possible definitions, *Texas Digital* instructs that the Court must look to determine which of those definitions are consistent with the specification. Plaintiffs never performed this step; but rather jumped to definition number 9. Plaintiffs' Brief, p. 18. Had Plaintiffs actually performed this step, they would realize that definitions 3 and 8 are also

consistent with the specification, and consistent with the definition proposed by Hu.[4]

Moreover, Plaintiffs cite two definitions of "drive": (1) the "stud on the handle is called the drive" (Plaintiffs' Brief, p. 18); and (2) "a tool which has a square end (1/4 inch, 3/8 inch, or ½ inch) which fits into a recess in a corresponding structure for the installation and removal of nuts and bolts." *Id.* From these sources, Plaintiffs somehow derive the following construction: "A shaft or shaft-like structure extended beyond the compartment." **Amazingly, Plaintiffs' sources do not contain even a single word from their proposed construction.** The sources do not mention "shaft," "shaft-like," or "compartment." Thus, Plaintiffs have completely re-written the definitions used by even their own "technical" sources. The canons of claim construction do not permit such a result, and Plaintiffs' construction should be rejected.

> **2.    Plaintiffs' Construction Of "Drive" Renders The Term "Member" Superfluous**

Plaintiffs proposed definition for "drive" is a "shaft that turns a socket." PLAINTIFFS' BRIEF, p. 18. However, Plaintiffs also conclude that the term "member" "means shaft or column." PLAINTIFFS' BRIEF, p. 19. Therefore, under Plaintiffs' proposed definition of "drive," which includes a shaft, the term "member" becomes superfluous and should be rejected. *Elekta Instr. v. O.U.R. Scientific Int.'l, Inc.*, 214 F. 3d 1302, 1307 (Fed. Cir. 2000)

> **C.    The Specification Does Not Limit "Drive Member" To A Shaft, Beam, Or Column With An Extended End**

Plaintiffs go on for pages about how the '387 Patent discusses a drive member having a shaft at one end. PLAINTIFFS' BRIEF, pp. 20-23. Hu acknowledges that, in some embodiments, drive member 20 has an elongated end. In fact, the specification teaches that drive member 20 includes different components depending on the embodiment. Specifically, the drive member 20

---

[4]      *See* Hu's Brief, p. 17.

can include, for example, an upper end 22, a drive column 23 on a lower end, and a gear wheel 21

formed in an intermediate portion thereof.[5]   Those components of drive member 20 are shown in

red circles in Figure 6:



6-6
Fig. 6

('387 Figure 6)

Given these distinct components that can make up drive member 20, it is important to look

to the claims at issue (in this case claim 17) to determine which of these components are present.

Claim 17 recites "a rotatably mounted drive member including a gear wheel . . . ."[6]   Claim 17 does

not mention any structure extending beyond the compartment.  However, when Hu desired a claim

directed specifically to a drive member that included an extended portion, he made this clear, as

shown by claim 1 of the '387 Patent:

> **a drive member including a first end extended beyond the compartment, a
> second end extended beyond the compartment,** and a gear wheel formed
> between the first end and the second end, the gear wheel being rotatably mounted
> in the compartment and including an outer periphery with a plurality of first
> teeth;

*See* '387 Patent, col. 7, ll. 60-67 (emphasis added).  Consequently, when Hu intended to claim the

---

[5]       '387 Patent, col. 4, ll. 17-19.

[6]       '387 Patent, col. 9, ll. 51-52.

embodiment of the drive member that extended beyond the compartment, he expressly did so. Plaintiffs' attempt to read this limitation into claim 17 must be rejected.

### D. Plaintiffs' Argument That The '991 And '992 Patents Support Plaintiffs' Construction Must Be Rejected

Plaintiffs argue that this Court should look to Hu's other patents to determine the meaning of "drive member" in the '387 Patent. However, Plaintiffs fail to cite the more pertinent portion of the '992 Patent:

> The drive member may be a gear wheel including an inner periphery for driving a fastener. Alternatively, the drive member includes a drive column for releaseably engaging with a socket.

'992 Patent, col. 2, ll. 28-31. Therefore, in direct contrast to Plaintiffs' argument, a "drive member" as used in the '992 Patent is consistent with Hu's proposed definition, and is not limited to an extended or shaft-like portion.

Further, Plaintiffs themselves establish that Hu's construction is proper. Specifically, in



FIG. 1

U.S. Patent No. 6,629,477,[7] entitled Reversible Ratchet Wrench with Distortion," Plaintiffs show only box end wrenches in the Figures.[8] Hu directs the Court's attention to Figure 1 (reproduced to the left), with particular attention to item 30 shown in the red box. Plaintiffs call item 30 a "driving member." Thus, Plaintiffs' own use of the term "driving member" to

---

[7]  A copy is attached as Exhibit I (hereinafter the "'477 Patent").

[8]  The '477 Patent is assigned to Hand Tool Design Corporation, which to the best of Hu's knowledge, is the intellectual property holding company of Plaintiffs' parent, Danaher Corporation.

describe the structure that does not have a shaft or extended portion *refutes all statements in* PLAINTIFFS' BRIEF that suggest one skilled in the art would understand a drive member to require a shaft extending beyond the compartment.

Additionally, several other patents for which Hu is the inventor show a "drive member" without an elongated portion. For example, U.S. Patent No. 6,450,068 shows a "drive member 20" in Figure 2 (shown in the red box below) and U.S. Patent No. 6,453,779 shows a "drive member 30" (shown in the red box below):



Fig. 2

Fig. 2

(Figure 2 of U.S. Patent No. 6,450,068)
("drive member 20" - Exhibit J)

(Figure 2 of U.S. Patent No. 6,453,779)
("drive member 30" - Exhibit K)

The "drive members" in these patents do not include an elongated or shaft-like portion. Therefore, these other patents reinforce Hu's position that one of ordinary skill in the art would not require "drive member" to have an extended or shaft-like structure.

Still further, Plaintiffs conveniently fail to cite other contemporary patents which do not

require a "drive member" to contain a shaft:



(Fig. 2 of U.S. Pat. No. 6,539,825)
("drive member 40" – Exhibit L)

(Fig. 1 of U.S. Pat. No. 6,155,140)
("drive member 7" – Exhibit M)

Therefore, other contemporaneous patents use the term "drive member" in a manner that is not limited to a structure having an elongated or shaft-like portion extending beyond the compartment.

### E.    Plaintiffs' Argument That The Claims Are Limited By The Summary Or The Specification Is Wrong

In support of its construction of "drive member," Plaintiffs cited several cases in support of their propositions that "[p]atent claims are limited by what the patent specification describes" (PLAINTIFFS' BRIEF, p. 25) and that "[t]he Federal Circuit has repeatedly relied on the Summary of the Invention when construing a disputed claim term." PLAINTIFFS' BRIEF at 21. While the Summary may be relevant to claim interpretation because it is a part of the specification, it is improper to import limitations from the Summary, or any other portion of the specification, into the claims. The Federal Circuit "has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that

embodiment." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *see also Burke, Inc. v. Bruno Independent Living Aids, Inc.*, 183 F.3d 1334, 1340-41 (Fed. Cir. 1999)("Consistent with the principle that the patented invention is defined by the claims, we have often held that limitations cannot be read into the claims from the specification or the prosecution history." Plaintiffs' attempt to generalize those cases contradicts the well-established principle that limitations from the specification cannot be read into the claims. *Burke*, 183 F.3d at 1340-41.

In *Kinik Co. v. ITC*, 362 F.3d 1359 (Fed. Cir. 2004), the court limited the claim term "mixture" to include only mixtures containing more of one component (liquid binder) than another (matrix powder) because "[d]uring prosecution the same specificity—the excess volume of liquid binder over matrix powder in the perform mixture—was emphasized as a material distinction from the prior art" and that "[c]laims cannot be construed as encompassing the prior art that was distinguished in the specification and disclaimed during prosecution." *Id.* at 1365. That is in contrast to the case at bar in which neither of the terms "tool" or "drive member" were defined in distinguishing the prior art.

Likewise, *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) is uninformative because, despite Plaintiffs' inference, the court did not use the specification to limit the claim term "prevent." Instead, the Federal Circuit decided that the narrow reading of the term "prevent" by the district court (*i.e.*, to require active prevention) was not supported by the specification, and indeed impermissibly interpreted the claims so as to exclude the preferred embodiments. *Id.* at 1379-81. Thus, the Federal Circuit pointed to the specification to highlight the improper narrowing of the claims by the district court, rather than used the specification to define a claim term.

In *Watts v. XL Systems, Inc.*, 232 F.3d 877 (Fed. Cir. 2000), the court determined that the

patentee had "limit[ed] the invention to structures that utilize misaligned taper angles" in both the specification and in the prosecution history of the patent. *Id.* at 883. Thus, in contrast to the present case, *XL Systems* is an example of a case in which the patentee disclaimed claim scope in the patent and during prosecution.

Further, in *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002), the Federal Circuit did not "rely[] on the Summary in construing 'reciprocating member.'" PLAINTIFFS' BRIEF at 21. In interpreting the claim, the Federal Circuit stated that "nothing in the respective patents' abstract, summary of invention or detailed description sets forth the shape or makeup of these structures." *CCS Fitness*, 288 F.3d at 1364. It is ludicrous for Plaintiffs to infer that the court's negative statement that the Summary did not define a reciprocating member is equivalent to a positive reliance on the Summary.

In the unpublished[9] case of *IGC-Medical Advances Inc. v. USA Instruments, Inc.*, 34 Fed. Appx. 715 (Fed. Cir. 2002), the Federal Circuit did not "rely" upon the Summary, but merely confirms that the claim construction, mandated by the language of the claims, is consistent with the Summary. Plaintiffs' other cases regarding the summary are equally inapposite. *See, Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343 (Fed. Cir. 2000) (The court did not "rely" upon the Summary to construe the term "controlling an immunizable disease" as suggested by Plaintiffs, but instead merely cited the Summary as consistent with its interpretation); *see also Harris Corp. v. IXYS Corp.*, 114 F.3d 1149 (Fed. Cir. 1997) (The Federal Circuit cites to the Summary as consistent with its construction.). Therefore, Plaintiffs' reference to the Summary is nothing more than a veiled attempt to import limitations from the specification into the claim, a practiced

---

[9] Unpublished cases are precluded by Federal Circuit local rule from being cited as precedent. FED. CIR. R. 47.6; *see also* 2D CIR. R. § 0.23.

condemned by the Federal Circuit.

Plaintiffs also cite *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, Nos. 02-1490, 02-1506, 02-1507 (Fed. Cir. 2004). However, in *Norian*, the Federal Circuit only looked to the specification to parse the patentee's syntax, not limit the definition of a claim term. The patentee in *Norian* had used the term "phosphoric acid source." The district court noted that the term "phosphoric acid source" is naturally read to mean "a source of phosphoric acid." Slip op. at 4. The district court, in reading the specification, determined that the patentee's syntax was inexact. Instead of "a source of phosphoric acid," where "phosphoric acid" is naming a single compound, based upon the specification, the court determined that the patentee meant "phosphoric" and "acid" to be separate terms modifying the term source. *Id.* at 4-6. Again, this type of syntactic error has not occurred in the present case.

Finally, Plaintiffs cite *David Nichols v. Strike King Lure Co.*, No. 3:99-CV-1950-BC, 2000 U.S. Dist. Lexis 15781 (N.D. Tex. Oct. 25, 2000). In *Nichols*, the court only turned to the specification for answers after determining that the disputed term was ambiguous. *Id.* at *28. No party is arguing that the terms "drive" or "member" are ambiguous. Thus, *David Nichols* is inapposite.

In conclusion, Plaintiffs' arguments that the claims must be limited to the specification, or the summary in particular, fails. Therefore, Plaintiffs' construction of the term drive member must be rejected.

### F.     35 U.S.C. §112, ¶ 6 Does Not Apply

Plaintiffs argue that Hu's construction of "drive member" lacks any structural description, and therefore must be construed in accordance with 35 U.S.C. §112, ¶ 6. In determining whether §112, ¶ 6 applies, courts look to the claim language itself, rather than a proposed construction. 35

U.S.C. § 112, ¶ 6. Plaintiffs make no attempt to argue that the language of claim 17 itself invokes §112, ¶ 6, because they could not. Therefore, Plaintiffs' argument must be rejected.

### G. The Federal Circuit Does Not Require The Type Of Structural Characteristics Proposed By Plaintiffs

Plaintiffs cite cases in which the term "member" has been defined and argue that those cases define "member" to have specific structural characteristics. Although cases have defined the term member, they have done so consistent with Hu's proposed construction. For example, the Federal Circuit in *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002), held that the term "member" could be a "structural unit such as a beam or tie" or a "distinct part of a whole." *Id.* at 1367. In the present case, consistent with the specification, Hu has used a definition virtually identical to the latter definition set forth by the Federal Circuit.

Additionally, in another case cited by Plaintiffs, *Engineered Prods. Co. v. Donaldson Co., Inc.*, 165 F. Supp. 2d 836 (N.D. Iowa 2001), the district court concluded that the term a "member," defined generally, is "a part or a piece." *Id.* at 875. Therefore, these cases are examples showing that Hu's construction - "a constituent part of any structural or composite whole" - is consistent with constructions reached in other cases.

## V.    "MOUNTED"

### A. Hu's Construction Does Not Render Other Portions of the Claim Superfluous

Plaintiffs argue that Hu's construction of the term "mounted" renders it superfluous, citing *Elekta Instr. v. O.U.R. Scientific Int.'l, Inc.*, 214 F.3d 1302 (Fed Cir. 2000). In that case, the Federal Circuit noted that a proposed construction for one term - "extending" - would render another term - "30°" - superfluous. *Id.* at 1307. This is different than the present case in which Hu's construction of mounted does not, even under Plaintiffs' argument, render *any other term* superfluous. Nevertheless, "put in position for use in" and "in" are not identical. Consequently,

Plaintiffs' "superfluous" argument fails. For example, something could be put into position for use into an object (*i.e.*, microprocessor could be "mounted" in a computer so that the computer functions), which differs from simply being put "in" the computer (which does not necessarily mean that the processor is in a position to allow the computer to function). Thus, Hu's proposed construction of "mounted" is not superfluous and is proper.

**B.     Plaintiffs' First Proposed Definition Must Be Rejected**

Plaintiffs propose two possible definitions of "mounted." The first definition is "attached to." Hu cannot agree with Plaintiffs' first definition. As explained in HU'S BRIEF, the term "attached to" connotes that the pawl is fastened to the compartment.[10]  *See* Random House The pawl in the preferred embodiment of the '387 Patent is not "fastened" to the compartment, but rather can move back and forth. *See* '387 Patent, col. 6, ll. 63-65 ("It is appreciated that the pawl **30** is pivoted during pivotal movement of the thumb piece **52** via transmission of the transmission member **20** and the ring **40** that engages with the pawl **30**."). Therefore, Plaintiffs' definition must be rejected as excluding a preferred embodiment. *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1349 (Fed. Cir. 2003).

**C.     Hu's Would Agree to Plaintiffs' Second Proposed Definition**

Plaintiffs' second proposed definition is "held in position." PLAINTIFFS' BRIEF, p. 35. This second definition is not in the Parties' Joint Claim Construction Statement. However, Hu would agree that the term "mounted" in claim 22 means "held in position for use" should the Court believe that interpretation is proper.

---

[10]     *See* WEBSTER'S UNABRIDGED DICTIONARY, p. 133 ("attached" means "to fasten or affix; join; connect."). A copy is attached as Exhibit N.

## VI.    "BEARING"

### A.    Plaintiffs' Proposed Construction Must Be Rejected Because It Read the Preferred Embodiments Into the Claim

Despite Plaintiffs' chastising of Hu's dictionary choice, Plaintiffs use a "general" dictionary definition for the term "bearing." PLAINTIFFS' BRIEF, p. 39 (citing *American Heritage Dictionary*). Plaintiffs then begin their quest for the proper construction with a simple dictionary definition, yet end with a construction that reads limitations from the specification into the claim:

Plaintiffs' Dictionary Definition:         "to exert pressure, force or influence"

Plaintiffs' Proposed Construction:      "touching sufficient to create a reactive force."

PLAINTIFFS' BRIEF, p. 39.

To get from the general definition to the proposed construction, Plaintiffs argue that "[t]he specification thus teaches that a reactive force is created when the pawl 'bears' against a point in the wall." *Id.* Plaintiffs conclude that their construction "reflects the description in the specification." *Id.* Plaintiffs fail to follow the *Texas Digital* path in reaching this result. For example, Plaintiffs utterly fail to explain why the general definition is not consistent with the specification. Rather, Plaintiffs again impermissibly import limitations from the specification into the claim, making Plaintiffs' construction improper.

### B.    Plaintiffs' Proposed Construction Must Be Rejected Because It Will Not Assist The Jury

Moreover, Plaintiffs' proposed construction loses sight of another goal of the claim construction process - to properly construe a term in a manner that the jury will understand. Both the Supreme Court and the Second Circuit have recognized that a confusing jury instruction is undesirable. In fact, in some instances, propounding a confusing jury instruction can be reversible error. Plaintiffs' proposed claim construction and jury instruction is unduly complicated and

confusing.  For at least this reason, Hu's construction of bearing should be adopted and submitted to the jury.

If the jury does not understand the construction, then it will have difficulty rendering the correct verdict.  With respect to Plaintiffs' proposed definition of "bearing," Hu is not arguing that it is incorrect, only that Hu's is equally correct *and easier for the jury to understand*, and thus should be adopted.  The Court will provide its construction of this term to the jury.  Every juror would understand the terms "pressing" or "pushing."  If a juror were to hear Plaintiffs' construction, then it would be left wondering what a "reactive force" is.  For example, those jurors who do not have a technical background may be confused by this terminology.  Additionally, those jurors who do have a technical background may be confused because this term is not further defined, as there are many types of forces, such as normal force, centrifugal force, centripetal force, etc.  Hu's proposed construction does not suffer from this drawback and uncertainty.  Hu's construction is a straightforward dictionary definition, which respectfully should be adopted.

## VII.  CONCLUSION

For the reasons set forth herein, and in Hu's Initial *Markman* Brief, Hu respectfully requests that his claim constructions be adopted.

Respectfully submitted,

By: _____

Jonathan M. Pierce
Federal Bar No. ct24417
Michael F. Heim, Esq.
Federal Bar No. ct22416
CONLEY ROSE, P.C.
7100 JP Morgan Chase Tower
Houston, Texas 77002-2912
Telephone:  (713) 238-8000
Facsimile:  (713) 238-8008
E-mail: jpierce@conleyrose.com
E-mail: mheim@conleyrose.com

J. Hoke Peacock III
Federal Bar No. ct24230
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 653-7897
E-mail: tpeacock@susmangodfrey.com

David B. Zabel, Esq.
Federal Bar No. ct01382
COHEN AND WOLF, P.C.
1115 Broad Street
Bridgeport, Connecticut 06604
Telephone: (203) 337-4255
Facsimile: (203) 394-9901
E-mail: dzabel@cohenandwolf.com

**Attorneys for Defendant Hou-Fei Hu**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Defendant Hu's Reply In Support Of His Markman Brief On Claimed Construction* was delivered to all known counsel of record, as follows, on the 14th day of May, 2004, as follows addressed to:

**Via Fed-Ex Overnight**
Francis H. Morrison
Matthew J. Becker
Day, Berry & Howard, LLP
CityPlace I
Hartford, Connecticut 06103-3499

**Via Fed-Ex Overnight**
Mark C. Dukes
Lloyd G. Farr
Nelson Mullins Riley & Scarborough, LLP
Keenan Building, Third Floor
1330 Lady Street
P O Box 11070 (29211)
Columbia, SC 29201

David Zabel