## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EASCO HAND TOOLS, INC., ARMSTRONG TOOLS, INC., KINGSLEY TOOLS, INC., LEA WAY HAND TOOL CORPORATION and MATCO TOOLS CORPORATION : : : : : : Plaintiffs, : : vs. : : HU, HOU-FEI a/k/a BOBBY HU : : Defendant. : | CIVIL ACTION NO. 3:02 CV 1723 (AVC) Consolidated with Civil Action No. 3:02 CV 1747 (AVC)   June 16, 2004 |

**PLAINTIFFS' REQUEST FOR LEAVE TO FILE SUR-REPLY IN FURTHER SUPPORT OF THEIR PROPOSED CLAIM CONSTRUCTION**

Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs' Easco Hand Tools, Inc., Armstrong Tools, Inc., Kingsley Tools, Inc., Lea Way Hand Tool Corporation and Matco Tools Corporation ("Easco") respectfully request leave to file the attached Sur-reply in further support of their proposed claim construction. This sur-reply memorandum (attached hereto as Ex. A) will assist the Court for several reasons:

1) In his Reply Brief, Defendant Hu, Hou-Fei ("Hu") departs from his own authorities calling for the use of intrinsic evidence and for the first time cites five (5) extrinsic patents from outside the record of the '387 patent at issue. Easco has not had the opportunity to respond to Hu's cited extrinsic patents and seeks to explain to the Court that while these references are inappropriate for consideration on issues of claim construction, they also add no support for Hu's proposed construction.

2) A recent decision last month by the Federal Circuit in <u>Vanderlande Industries Nederland BV v. ITC.</u>, 36 F.3d 1311, No 03-1349, 2004 U.S. App. LEXIS 8655 (Fed. Cir. May 3, 2004) provides additional guidance in the area of claim construction. <u>Vanderlande</u>, a case decided after Easco filed their main brief, is highly relevant in that the Federal Circuit ruled that general usage dictionaries such as those cited by Hu are irrelevant for purposes of claim construction when relevant technical authorities exist such as those provided here by Easco. <u>Vanderlande</u> is further applicable here in that it expressly rejects a proposed definition of a claim term because the proposal was expressed in purely functional terms and is not limited to specific structures, just as Hu's proposed construction of the disputed term "drive member."

3) Finally, in an effort to assist the court, this Sur-reply corrects several misstatements of law made by Hu.

For all the above reasons, Plaintiffs respectfully requests the Court grant them leave to file the attached Sur-reply.

Respectfully Submitted,

PLAINTIFFS: EASCO HAND TOOLS, INC.,
ARMSTRONG TOOLS, INC., KINGSLEY TOOLS,
INC., LEA WAY HAND TOOL CORPORATION
and MATCO TOOLS CORPORATION

By_____
Francis H. Morrison (ct 04200),
*fhmorrison@dbh.com*
Matthew J. Becker (ct 10050)
*mjbecker@dbh.com*
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut  06103-3499
Telephone: (860) 275-0100
Fax: (860) 275-0343
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Plaintiffs' Request for Leave to File Sur-reply is being served via overnight mail, postage prepaid, this 16th day of June, 2004 to:

J. Hoke Peacock III
Randall W. Wilson
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096

David B. Zabel
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604

Michael F. Heim
Jonathan Pierce
Conley, Rose & Taylor, P.C.
600 Travis Street, Suite 7100
Houston, TX 77002

                                                                                                                                                                                                                                                                                    _____

                                                           Matthew J. Becker

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EASCO HAND TOOLS, INC., ARMSTRONG TOOLS, INC., KINGSLEY TOOLS, INC., LEA WAY HAND TOOL CORPORATION and MATCO TOOLS CORPORATION<br><br>      Plaintiffs,<br><br>vs.<br><br>HU, HOU-FEI a/k/a BOBBY HU<br><br>      Defendant. | : CIVIL ACTION NO. 3:02 CV 1723 (AVC)<br>: Consolidated with Civil Action No. 3:02 CV<br>: 1747 (AVC)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: June 16, 2004 |

**PLAINTIFFS' SUR-REPLY IN FURTHER SUPPORT OF THEIR PROPOSED<br>CLAIM CONSTRUCTION**

     The central difference between the parties' proposals boils down to the standard the Court must employ in identifying the proper construction of the claim terms in the '387 patent. Easco seeks to apply the long-standing rules of construction requiring that a term be given a precise definition: (1) in accordance with its customary meaning understood by those skilled in the relevant technical art, here tool design, (2) "most consistent" with the use of the term in the patent and intrinsic evidence, and (3) limited to definite physical structures and not purely functional concepts. Consistent with these principles, Easco proposes construing "drive member," for example, as "a shaft or shaft-like structure extended beyond the compartment." This specific structural definition, grounded in multiple tool design technical authorities, is most consistent with each and every use of "drive member" in the '387 patent and intrinsic evidence.

     Defendant Hu, in contrast, abandons all three of these principles and seeks to divorce "drive member" from its technical tool design context. Hu does not even claim that his proposed

construction, "a constituent part of any structural unit or composite whole that causes something to move by force or compulsion in a direction" satisfies these principles. Instead, Hu attempts, unsuccessfully, to explain away his departure from all three. First, Hu does not contend that his construction is the ordinary and customary meaning known to those skilled in tool design, but argues, without support, that "drive member" is not a technical term. Second, Hu does not contend that he has identified the best definition "most consistent" with the '387 patent and its specification, but argues, incorrectly, that he need not do so because this long-held claim construction requirement has recently changed. Lastly, Hu does not limit his proposal to any defined structure, thereby improperly extending the term's coverage to anything that forces something else to move, but baldly claims no specific structures are required. All three of Hu's "explanations" are legally erroneous. None can support a proper claim construction. All three should be rejected.

## I.   HU'S PROPOSED CONSTRUCTION IS NOT THE ORDINARY AND CUSTOMARY MEANING TO ONE SKILLED IN THE ART OF TOOL DESIGN.

Hu does not assert, let alone establish, that his proposed constructions reflect the ordinary and customary meanings to those skilled in the relevant technical art of tool design. Hu instead offers broad, general usage definitions for each of the component words of the claim terms at issue. (See Hu Reply Br. at 4-5, 7.) Attempting to rationalize this approach, in regard to "drive member" Hu states that "drive" "is not a technical term requiring the use of a 'technical' dictionary." (See id. at 7.) Hu provides no factual support for this inaccurate assertion, proffering only a misplaced citation to Novartis Pharmaceuticals Corp. v. Eon Labs Manufacturing Co., 363 F.3d 1306 (Fed. Cir. 2004). (Id.) In Novartis, the court turned to general purpose dictionaries because neither party suggested that the term at issue, "hydrosol,"

had any specialized meaning separate from the general dictionaries.  Novartis, 363 F.3d at 1309.[1]
Here in contrast, Easco, relying on two separate technical dictionary treatises, has established
that "drive" has a highly specialized meaning when used in tool design.  (Easco Br. at 18-20.)

Hu has no response to Easco's primary technical treatise, the TAB Handbook of Hand
and Power Tools (Easco Br. at 18), establishing the tool design-specific definition of "drive".
(See generally Hu Reply Br.)   Hu does not claim that its definition is erroneous or inapplicable
to the '387 patent, and simply turns a blind-eye to it.  (See id.)  Regarding Easco's second
source, the Dictionary of Automotive Terms, Hu merely contends that in addition to its definition
No. 9 expressly directed to the tool context, it also has several definitions directed to driving a
car (definitions nos. 1-6), including turning a steering wheel or shaft (definition 3).  (See id. at 7-
8.)[2]  Importantly, Hu does not, and cannot, claim that the car driving definitions are more
relevant to the tool design context of the '387 patent than the definition expressly involving
tools.  (See id. at 8 (quoting definition no. 9 "a tool which has a square end . . . .").)  (See, infra,
§ II (claim construction requires choosing the definition most consistent with the patent).)  Thus,
Hu does not contest the applicability of Easco's tool design treatises or their definitions.

As a matter of law, therefore, Hu cannot use any general usage dictionary definitions to
trump Easco's established technical definitions.  Just last month the Federal Circuit held that
where such technical dictionaries and treatises evidence that "artisans would attach a special

---

[1] Hu makes the same argument with regard to "ratchet" and "tool" not being technical terms.  (Hu Reply Br. at 4-5.)  There, in addition to Novartis, Hu miscites other cases where no technical definition was proffered for the terms at issue.  See Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1370-71 (Fed. Cir. 2004)("The parties do not advance any other dictionary definition, nor do the alternative definitions in the dictionary pertain even superficially to the issue at hand."); Gart v. Logitech, Inc., 254 F.3d 1334, 1343 (Fed. Cir. 2001)("We adopt the ordinary definitions of the terms 'wrapped' and 'flexion,' . . . proffered by Gart because they are standard dictionary definitions that Logitech does not dispute.").  Such is not the case here.

[2] It should come as no surprise to Hu that an automotive dictionary includes steering a car amongst its definitions of driving.

meaning to a claim term" then "general-usage dictionaries are rendered irrelevant with respect to that term . . . ". Vanderlande Industries Nederland BV v. ITC, 36 F.3d 1311, No. 03-1349, 2004 U.S. App. LEXIS 8655, *22 (Fed. Cir. May 3, 2004) (emphasis supplied; copy attached as Ex. A). See also Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1206 (Fed. Cir. 2002) (requiring the use of "relevant dictionaries, encyclopedias and treatises" in claim construction (emphasis supplied)). "[A] general-usage dictionary cannot overcome credible art-specific evidence of the meaning … of a claim term." Vanderlande, 2004 U.S.App. LEXIS 8655, at *22.[3]

Easco is the only party that proposes a construction that is the ordinary meaning of "drive member" to those skilled in the relevant art of tool design. Hu has not done so, and does not claim otherwise. As a result, Hu's proposed construction has no relevance to the '387 patent or its tool design context, and it must be rejected.

## II. EASCO'S PROPOSED CONSTRUCTION OF "DRIVE MEMBER" IS THE DEFINITION MOST CONSISTENT WITH THE INTRINSIC EVIDENCE OF THE '387 PATENT SPECIFICATION.

### A. *Texas Digital* Did Not Change The Rules Of Claim Construction And Courts Still Must Identify The Ordinary Meaning Of Claim Terms Within The Context Of A Patent's Intrinsic Evidence.

Rather than proposing a construction matching the ordinary meaning to one skilled in the art of tool design, Hu searches amongst all available definitions (both from his general usage dictionaries, and now one of Easco's technical dictionaries) for the broadest definitions of "drive" and "member", and argues his patent reaches to cover all such definitions not expressly

---

[3] Hu does observe correctly that Easco's proposed construction for "drive member" is based on the relevant technical definitions of "drive" and "member", rather than quoting them all verbatim. (Hu Reply Br. at 9.) This is entirely appropriate. See, e.g., ADE Corp. v. KLA-Tencor Corp., 252 F. Supp. 2d 40, 55-56 (D. Del. 2003) (rejecting plaintiff's argument that when construing the term "oblique zone" the court had to assess and combine the ordinary meanings of the individual terms "oblique" and "zone"). If the Court, however, is concerned with Hu's objection, Easco is willing to adopt a construction for "drive member" directly quoting any of the extended shaft definitions from the technical treatises.

inconsistent with or disclaimed by the patent specification.  (See Hu Reply Br. at 7-8.)  Hu argues that his incorrect approach to construction is justified by the Federal Circuit's 2002 opinion in Texas Digital.  (See id. at 2-3, 7-8.)   Texas Digital, however, was not as Hu asserts a "sea change in the law of claim construction" and more importantly does not authorize Hu's method of construing claim terms to cover all possible dictionary definitions.

Hu's argument rests on a single line he misreads from the Federal Circuit's opinion in Texas Digital, 308 F.3d at 1204.  (See Hu Reply Br. at 2-3.)    The entire paragraph encompassing that line shows that Texas Digital does not alter the rules of construction at all.  Both the portions before and after Hu's carefully-selected sentence reaffirm that the goal of claim construction is, and remains, to choose the specific definition that is most consistent with the way the inventor actually uses the term in the patent specification:

> Because words often have multiple dictionary definitions, some having no relation to the claimed invention, the intrinsic record must always be consulted to identify which of the different possible dictionary meanings of the claim terms in issue is most consistent with the use of the words by the inventor. …
>
> The objective and contemporaneous record provided by the intrinsic evidence is the most reliable guide to help the court determine which of the possible meanings of the terms in question was intended by the inventor to particularly point out and distinctly claim the invention.

Texas Digital, 308 F.3d at 1204-05 (citations omitted; emphasis supplied).

Even the paragraph's intervening sentence cited by Hu -- "If more than one dictionary definition is consistent with the uses of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings."  (See Hu Reply Br. at 2-3) -- says nothing to the contrary.  This line merely states that if the patent specification uses the claim term in multiple ways, the term should be construed to cover all those ways.[4]  Here, in contrast, the '387

---

[4]  Such was the situation in the case Texas Digital cites in support of Hu's chosen sentence, Rexnord Corp. v. Laitram Corp., where the term in dispute not only had two possible dictionary definitions, but the Summary of

patent specification uses the term "drive member" in only one way - a shaft extended beyond the compartment. (Easco Br. at 20-24.)

Removing any possible doubt, the Texas Digital court concluded its construction discussion making clear that the most relevant sources should be used to find the best definition, and patents should not be read to include all definitions that might be available in a vacuum:

> By examining <u>relevant</u> dictionaries, encyclopedias and treatises to ascertain possible meanings that would have been attributed to the words of the claims by those skilled in the art, and by further <u>utilizing the intrinsic record to select from those possible meanings the one or ones most consistent</u> with the use of the words by the inventor, <u>the full breadth of the limitations intended by the inventor will be more accurately determined</u> and the improper importation of unintended limitations from the written description into the claims will be more easily avoided.

Texas Digital, 308 F.3d at 1206 (emphasis supplied).

Moreover, Hu's approach to Texas Digital has been expressly rejected. "The Court rejects [plaintiff's] effort to focus attention solely on dictionary definitions. . . . Texas Digital did not make them the 'be all and end all' of claim construction or otherwise work a dramatic change in the process of construing claims." ADE Corp. v. KLA-Tencor Corp., 252 F. Supp. 2d 40, 57 (D. Del. 2003). Indeed, the court took the patent holder to task for simply adding up all arguably possible definitions:

> [Plaintiff] would have this Court first recite a dictionary definition for each word in a contested patent claim phrase, add those definitions together, and adopt the resulting amalgamation as the Court's construction before proceeding to any consideration of the remainder of the intrinsic record. The cases cited by [plaintiff], however, do not require the cataloguing of dictionary definitions before construing disputed claim phrases, nor do they require the adoption of a definition equal to the sum of the individual definitions of the words in a contested phrase.

---

Invention and entire specification described embodiments expressly utilizing <u>both</u> definitions. 274 F.3d 1336, 1343 (Fed. Cir. 2001)(reversing district court's claim construction because "[w]hen the claim language is assessed on its own, and when the written description is examined carefully, one finds that the patentee has described an invention that embraces, through the word 'portion,' structure that may be either 'integral' or 'separate.'").

Id. (holding "the case law demonstrates that claim construction does not conclude with the shutting of a dictionary"). The court cautioned that in proper claim construction, "context is critical and the import of the intrinsic record cannot be ignored." Id. at 59.

> A narrow approach to patent claim construction that focuses on summing dictionary definitions may well lead a court to adopt an inappropriate construction, one that is inconsistent with the pertinent art and the intrinsic record of the patent in suit. That danger is exacerbated when a phrase, rather than a single word, is at issue. The meaning of a phrase is often greater than the sum of the individual words.

Id.

Therefore, no legal basis permits Hu to sum all possible definitions rather than selecting the best definition that is most consistent with the '387 patent and its intrinsic evidence. Easco has chosen the specific technical definition most consistent with the way the patent uses the term "drive member." The '387 patent specification repeatedly discloses the drive member as a shaft with an extended end, and nothing else. (Easco Br. at 20-24.) As the definition most consistent with those uses, Easco's proposed construction of drive member should be adopted.[5]

### B. Unable To Support His Proposed Construction With Intrinsic Evidence, Hu Abandons *Texas Digital* And Wrongly Resorts To Extrinsic Evidence.

Confronted with the fact that the '387 patent specification and intrinsic evidence do not support his broader, general definitions, Hu turns to five extrinsic patents to support his construction of "drive member." (See Hu Reply Br. at 11-13.) These patents were not cited in

---

[5] Hu accuses Easco of misusing the specification when construing "drive member," claiming Easco tries to import a limitation from the preferred embodiment. (Hu Reply Br. at 13-16.) Hu tries, unsuccessfully, to distinguish the multiple cases Easco cites supporting such uses of a patent's specification, and in particular its Figures and Summary of the Invention, to provide the claims context and select the most consistent definition. (See id.) Notably, Hu does not cite a single authority where a court ignored the contextual requirements in the specification, and adopted a broader construction as Hu attempts here. Even more significantly, in his own reply brief Hu turns to the '387 specification and its figures to define the term "ratcheting tool". (Id. at 5.) Hu's own conduct and lack of supporting authority belie his misplaced accusations.

the prosecution history.[6] Thus, all five constitute extrinsic evidence, and should not be relied upon by the Court. As a general rule, a court should never rely on extrinsic evidence such as art beyond that cited in the prosecution history. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996). Extrinsic evidence is to be used only as a last resort because the intrinsic evidence of a patent constitutes the public record on which the public is entitled to rely. Id. Extrinsic evidence may be considered only if a claim remains ambiguous after consulting all the intrinsic evidence of record. Id. There are no ambiguities in the term "drive member" that would require a court to resort to extrinsic evidence, and Hu does not claim otherwise. Instead, the '387 patent specification and the relevant technical dictionaries and treatises unambiguously support Easco's proposed construction of a shaft or shaft-like structure extended beyond the compartment.

Even if considered, however, these patents provide no support for Hu's proposed construction. None of them employ such a broad definition of "drive member." They show situations where inventors, mostly Hu himself, acted as their own lexicographer and specifically redefined "drive member" as a gear wheel. (See '068 patent, col. 3, ll. 45 – 46 ("[i]n this embodiment, the drive member 20 is in the form of a gear wheel"); '779 patent, col. 3, ll. 49-52 ("[a] drive member (in the form of a gear wheel 30 in this embodiment)"); '825 patent, col. 3, ll. 10-11 (same); '477 patent col. 2, l. 64 – col. 3, l. 1 ("[a] driving member 30 … having an inner wall defining a plurality of driving groves 31 and an outer wall").)[7] Easco previously noted that

---

[6] Easco acknowledges that the applications from which three of the patents issued (the '068, '779, and '825 patents) were cited in the prosecution history. Hu, however, relies not on the applications but on the patents which issued from them.

[7] The fifth patent, the '140 patent, in fact discloses a ratchet wrench that is not a typical ratchet wrench. The drive member is a separate component that "clips" into the gear wheel. Even here, however, the drive member is specifically defined, and notably depicts one or more driving stems and/or socket extended therefrom, for engaging with various kinds of fasteners or tool extensions. ('140 patent, col. 2, ll. 43-47, figs. 4 and 5). This reference, if anything, supports Easco's construction, not Hu's.

Hu had done this in other patents actually cited in the '387 patent's prosecution, namely the '991 and previously asserted but now dropped '992 patents. (Easco Br. at 28-30.) In stark contrast to those references and to Hu's extrinsic references, Hu chose not to do so in the '387 patent. There is not even a hint in the '387 patent specification – neither in the figures nor the text – that would lead a person of ordinary skill in the art to conclude that the term "drive member" is a gear wheel or anything other than its customary technical meaning of a shaft extended beyond the compartment. Because the '387 patent does not redefine "drive member," these extrinsic "gear wheel" examples cannot be most consistent with the way the '387 patent specification actually uses the term "drive member."

Additionally, Hu's strained attempt to have the Court base its construction of "drive member" in the '387 patent on the term's use in other patents would lead to an absurd result. None of the claims in the extrinsic patents separately claim a "gear wheel" in addition to the "drive member." The '387 patent, however, separately states both terms: "a drive member including a gear wheel." ('387 patent, claim 17.) Thus, if the term "drive member" were construed to mean only a gear wheel, then claim 17 would read nonsensically: a gear wheel including a gear wheel. The phrase "drive member including" would be superfluous and redundant. Hu's proposed construction, therefore, should be rejected. See, e.g., Eleckta Instr. S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting construction rendering a term superfluous).[8] Any definition causing such a redundancy also cannot be the definition most consistent with the way the words are actually used in the patent.

---

[8] Hu concedes that the '387 references to "drive member" call for a shaft with an elongated end, but argues that claim 1 relates to all of those descriptions by claiming a drive member with ends extended beyond the compartment, and that asserted claim 17 is different because it does not specify such ends. (Hu Reply Br. at 9-11.) Hu apparently argues that claim 17 and its "drive member" have no basis in the specification. If true, the claim would fail for lacking an adequate written description. See 35 U.S.C. § 112, 1.

### III. HU CANNOT IGNORE THE LEGAL REQUIREMENT THAT "DRIVE MEMBER" BE LIMITED TO SOME DEFINED STRUCTURE.

Regardless of which dictionaries are relevant, and which parts of the '387 patent specification are found controlling, the term "drive member" cannot be construed as Hu claims to cover "a constituent part of any structural unit or composite whole that causes something to move by force or compulsion in a direction". (Hu Brief at 15.) This construction lacks any limitation to specific structures, and indeed would literally cover any part of anything that causes anything else to move. Such a purely functional description is impermissible as a matter of law. See, e.g., Vanderlande, No. 03-1349, 2004 U.S. App. LEXIS 8655, *22-23 (Fed. Cir. May 3, 2004) (rejecting proposed definition of "a device for facilitating the movement of something" because it is "vague, abstract and fails to connote a particular structure").

35 U.S.C. §112, 6 forbids Hu from directly writing such a purely functional definition in place of the words "drive member" into the claim language itself. (Easco Br. at 31-35.) Hu's only response merely states that the claim language itself does not contain a functional definition. (Hu Reply Br., at 16-17.) Hu misses the point, and provides no authority permitting him to do indirectly through claim construction what, Hu apparently concedes, was prohibited directly in claim drafting.

Likewise, in its opening brief, Easco cited 15 separate decisions construing the term "member" as requiring some definite structure. Hu attempts a response to only two. (Hu Reply Br. at 17.) Furthermore, Hu's effort to distinguish each of these fails. Hu argues that CCS Fitness Inc. v. Brunswick Corp., 288 F.3d 1359 (Fed. Cir. 2002), construed the term "member" to be a structural unit such as a beam or tie or a distinct part of a whole. (See Hu Reply Br. at 17 (emphasis added).) In actuality, the court construed "member" to be "a beam-like structure that is a single unit in a larger whole." CCS Fitness, 288 F.3d at 1367. Similarly, in trying to rebut

-14-

Easco's use of <u>Engineered Products Co. v. Donaldson Co.</u>, 165 F. Supp. 2d 836 (N.D. Iowa 2001), Hu leaves out a portion of that court's construction of "member." (<u>See</u> Hu Reply Br. at 17.) The <u>Engineered Products</u> court did hold that "member" is a part or piece, but also required defined structural characteristics, namely that the member be slender in length relative to its width. 165 F. Supp. 2d at 875. Therefore, neither case adopted a purely functional definition and only by misstating the courts' constructions can Hu argue to the contrary. In fact, Hu provides no case defining "member", or a compound term including "member," in purely functional terms such as those he advocates here.

Hu's only other response notes that Easco claims that either "drive" means shaft or "member" means shaft, and argues that if both words mean shaft they would be redundant. (Hu Reply Br. at 9.) Hu then commits a logical fallacy, arguing that because both words cannot mean shaft, that neither one means shaft. (<u>Id.</u>) Hu again misses the point. Regardless of how each word is read[9], Hu may not read any and all specific structures out of the entire term. <u>See</u> <u>Vanderlande</u>, 2004 U.S. App. LEXIS 8655, *22-23.

---

[9] "Drive member" is a compound term denoting a shaft or shaft-like structure with extended ends as defined in the technical tool design treatises and described in the '387 specification. It can be viewed as a compound noun having that meaning, as the verb "drive" describing what the member shaft does and how it moves, or as "drive" meaning shaft and "member" meaning simply structure. "Drive" and "member" thus compliment and do not conflict with each other.

**CONCLUSION**

For all of the above reasons, the Court should reject Hu's proposed constructions and adopt Easco's.

>Respectfully Submitted,
>
>PLAINTIFFS: EASCO HAND TOOLS, INC.,
>ARMSTRONG TOOLS, INC., KINGSLEY TOOLS,
>INC., LEA WAY HAND TOOL CORPORATION
>and MATCO TOOLS CORPORATION
>
>
>By_____
>     Francis H. Morrison (ct 04200),
>     *fhmorrison@dbh.com*
>     Matthew J. Becker (ct 10050)
>     *mjbecker@dbh.com*
>     Day, Berry & Howard LLP
>     CityPlace I
>     Hartford, Connecticut  06103-3499
>     Telephone:  (860) 275-0100
>     Fax:  (860) 275-0343
>     Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Plaintiffs' Sur-reply is being served via overnight mail, postage prepaid, this 16th day of June, 2004 to:

>J. Hoke Peacock III
>Randall W. Wilson
>Susman Godfrey L.L.P.
>1000 Louisiana Street, Suite 5100
>Houston, TX 77002-5096
>
>David B. Zabel
>Cohen and Wolf, P.C.
>1115 Broad Street
>Bridgeport, CT  06604
>
>Michael F. Heim
>Jonathan Pierce
>Conley, Rose & Taylor, P.C.
>600 Travis Street, Suite 7100
>Houston, TX  77002

_____
Matthew J. Becker